COMMONWEALTH vs. ELVIO J. MARRERO.

Franklin. November 3, 1997. - March 12, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Redirect examination, Pattern of conduct, Inference. *Practice, Criminal,* Reasonable doubt, Capital case.

At a murder trial, evidence of the defendant's other bad acts was properly admitted to establish the circumstances surrounding the murder [68]; to rebut or explain on redirect the implications left by the defendant's cross-examination [68-69]; as entirely elicited by the defendant himself [69-70]; or to show a common pattern of conduct by the defendant tending to establish his identity as the murderer [70-72].

At the trial of a murder indictment, the judge's instructions on the prior bad acts evidence [72-73] and inferences [73-74] were sufficient, were not erroneous, and created no substantial likelihood of a miscarriage of justice.

INDICTMENT found and returned in the Superior Court Department on December 7, 1994.

The case was tried before *John F. Murphy, Jr.,* J.

*Roger A. Cox* for the defendant.

*Renee L. Steese,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Elvio J. Marrero, appeals from his conviction of murder in the first degree by reason of deliberate premeditation and extreme atrocity or cruelty. The defendant claims that the trial judge erred in admitting evidence of the defendant's prior bad acts of violence and drug dealing. The defendant also claims that the judge's instructions to the jury were flawed because the instructions did not properly limit the use the jury could make of the bad acts evidence and did not instruct the jurors that any inferences they drew had to be established beyond a reasonable doubt. For the reasons stated hereafter, we affirm the defendant's conviction. We decline to exercise our power under G. L. c. 278, § 33E, in the defendant's favor to order a new trial or enter a verdict of a lesser degree of

guilt.

1. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). The victim, Pernell R. Kimplin, was found dead in his apartment in Greenfield on October 16, 1994. He was gagged, and his hands and feet were "hog-tied" with electrical cords and rope. He had been stabbed once in the chest and once in the back. He also had been beaten about his head, neck, shoulders, and back with a wooden board broken from a dresser drawer. The medical examiner opined that the victim died on or about October 14, 1994, as a result of the stab wounds.

The victim was last seen alive on the evening of October 13, 1994, in his apartment. The defendant was also at the victim's apartment and was planning to spend the night there. Early the next morning, the defendant asked several acquaintances for a ride to Chicopee. At that time the defendant had blood on his hands and arms, and appeared very nervous. He told one of his acquaintances that he spent the night at the victim's apartment, the police were after him, and the police hit him in the back of the head. On another occasion in mid-October, the defendant told another acquaintance that he just killed someone with a knife. He said that he needed money to buy an airplane ticket to the Dominican Republic.

The defendant, who was a crack cocaine dealer, regularly sold drugs to the victim. The victim often owed money to the defendant for the drugs. In September, 1994, the victim sought to purchase cocaine from the defendant on credit. The defendant refused and said that the victim already owed him $600. The defendant also had reason to believe that the victim had stolen drugs from him.

The defendant was detained on February 12, 1995, when he attempted to enter the United States at the John F. Kennedy International Airport in New York. He arrived on a flight originating in the Dominican Republic. The defendant carried the same black leather jacket that he had worn the night he stayed at the victim's apartment. Laboratory analysis revealed the presence of blood in several places on the jacket. The defendant also made several inconsistent statements to the authorities about when he left the United States, where he lived,

and whether he had ever been to Greenfield.[1]

2. *Prior bad acts evidence.* The defendant contends that the judge erred in admitting testimony concerning prior bad acts of violence and drug dealing. The Commonwealth acknowledges that the testimony included prior bad acts by the defendant, but contends that the evidence was admissible, both to show the circumstances surrounding the murder and to show the defendant's motive, pattern of conduct, and intent. Moreover, the Commonwealth asserts that much of the contested testimony either was elicited by the defendant on cross-examination, or the door to it was opened by the defendant's cross-examination so that the Commonwealth could properly elicit it on redirect examination. We agree with the Commonwealth.

" 'Evidence of prior bad acts is not admissible to show that the defendant has a criminal propensity or is of bad character.' *Commonwealth* v. *Robertson*, 408 Mass. 747, 750 (1990). Such evidence, if relevant, may be admitted, however, if it is offered for a purpose other than impugning the defendant's character, and if its probative value is not substantially outweighed by any prejudice." *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991). Such evidence may be used to prove common scheme, pattern of operation, identity, intent, or motive. *Commonwealth* v. *Scott*, 408 Mass. 811, 818 (1990). It also may be used where evidence of the prior bad acts is "inextricably intertwined with the description of events . . . of the killing." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982), quoting *Commonwealth* v. *Hoffer*, 375 Mass. 369, 373 (1978). "The prosecution [is] entitled to present as full a picture as possible of the events surrounding the incident itself." *Bradshaw, supra* at 269-270. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816 (1973). "Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed

---

[1]In statements to immigration officials at the time of his attempted entry into the United States, the defendant said that he lived in New York and never had lived anywhere else in the United States. In an interview with the Massachusetts State police the next day, the defendant claimed to have left for the Dominican Republic around October 9, 1994, and said that he was in the Dominican Republic at the time of the victim's death. He also said that he lived in Chicopee, and denied ever being in Greenfield or knowing the victim or several people who subsequently testified. During a later interview with the State police, the defendant claimed that he left for the Dominican Republic in June, 1994, and said that he had been in Greenfield on two occasions.

by its prejudicial effect, are questions within the sound discretion of the judge. . . . [T]he judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995), quoting *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990).

a. The defendant argues that, generally, "the Commonwealth's witnesses supplied excessive detail about the crack-addicted underclass of Greenfield and how the defendant preyed upon it." The defendant asserts that this evidence unfairly prejudiced the jury. Most of the events germane to the murder, as well as the relationships among the defendant, the victim, and many of the witnesses, arose from, or were related to, the sale and use of illicit drugs.

The Commonwealth's theory of the case was that the defendant killed the victim either because the victim owed the defendant money for drugs or because the defendant believed that the victim had stolen his drugs. The defense strategy pointed to another of the defendant's drug customers as the likely perpetrator. In these circumstances, it was unavoidable that evidence of the defendant's drug business and his interactions with his customers would be admitted.[2] The Commonwealth was entitled to establish before the jury a context for the killing. See *Bradshaw*, *supra* at 269-270; *Chalifoux*, *supra*. "Without the challenged evidence the killing could have appeared to the jury as an essentially inexplicable act of violence." *Bradshaw*, *supra* at 269.

b. The defendant particularly identifies the testimony of three drug customers of the defendant, Jerry Desbiens, Lynn Morehouse, and Glenn Otto, as unduly prejudicial. He asserts that the admission of these witnesses' testimony requires reversal. We do not agree. We examine each witness's disputed testimony in turn.

Jerry Desbiens said that the defendant was a crack cocaine dealer and that the victim was one of the defendant's regular customers. He also said that he saw the defendant with the victim on the night of October 13, and that he (Desbiens) gave the defendant a ride to Chicopee the following morning. On cross-examination, Desbiens acknowledged that, speaking of the defendant, he told the police, "I want you to get him." On

---

[2]The defendant acknowledges in his brief that the nature of his relationship with the victim was "certainly relevant."

redirect, Desbiens said that he wanted the police to "get" the defendant for two reasons: because the victim did not "deserve[] what he got," and the defendant had threatened Desbiens with a knife a week or two before the murder because the defendant believed that Desbiens had stolen some cocaine from him. Desbiens further said that he defended himself with an axe handle and that the two men had worked out their dispute.

At trial, the defendant objected to Desbiens's testimony on redirect examination. The judge admitted the evidence, ruling that the testimony was proper because the defense had "thoroughly covered" the issue of the witness's bias against the defendant on cross-examination, and the Commonwealth should have the opportunity to explain the implication left by the defendant's cross-examination that the witness was biased against the defendant. There was no error.

"The purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination." *Hoffer, supra* at 375. "Having opened the door to this information, the defendant essentially invited the Commonwealth to address the issue on redirect examination. . . . For this reason, the defendant's claim of prejudice is highly suspect." (Citation omitted.) *Otsuki, supra* at 236. The defendant's cross-examination elicited evidence of the witness's bias against him. The Commonwealth was entitled to rehabilitate its witness. See *Commonwealth* v. *Evans*, 415 Mass. 422, 425-426 (1993); *Commonwealth* v. *Errington*, 390 Mass. 875, 880-881 (1984).

The defendant next asserts that the testimony of Lynn Morehouse was "murky character assassination" and should not have been admitted. Morehouse said that, at about 2 A.M. on October 14, the defendant climbed through her bathroom window, appeared upset, and asked her to go next door and ask Desbiens to give him a ride somewhere. Morehouse noticed dried blood on the defendant's arms and hands. On direct examination, Morehouse admitted that she did not initially tell the police everything she knew about this incident because she felt intimidated by the defendant and did not want to get involved. Morehouse also said that her roommate had stolen crack cocaine worth about $1,000 from the defendant's "stash" in August or September, 1994.

On cross-examination, defense counsel questioned Morehouse about her involvement in the defendant's drug business

and her possible involvement in the victim's murder. Defense counsel also inquired of Morehouse several times why she was not initially completely forthcoming with police. She responded variously that she was "pretty much scared" of the defendant; "[h]e just scares me"; "I have seen [the defendant] do things that aren't very nice"; and "I've seen him and heard of things that he's done to other people." When asked by defense counsel whether she had been present when the defendant had "done anything to anyone," Morehouse answered that she had been present during two incidents between the defendant and other people. Thus, the defendant elicited the challenged testimony himself. There was no error. See *Otsuki, supra* at 236.

The defendant emphasizes as error the admission of Glenn Otto's testimony. This testimony was elicited largely by the Commonwealth. But see note 3, *infra*. Otto testified that he frequently purchased cocaine from the defendant and that, in exchange for cocaine, he allowed the defendant to sell drugs from his house. He also said that the victim made numerous purchases of cocaine from the defendant and that the victim on occasion owed the defendant money for drugs.

Otto said that in August or September, 1994, the defendant appeared at his house carrying an extension cord and a piece of wire. The defendant offered Otto five bags of cocaine to help the defendant retrieve money he was owed by Desbiens. The defendant wanted to tie up Desbiens on the railroad tracks because the defendant suspected him of using the cocaine that the defendant had given him to sell. The defendant also told Otto that the defendant owed his drug suppliers about $3,000. The defendant suggested that the drug suppliers would be after the defendant for the money and he in turn would be after his customers for it.

Otto also said that, about a month before the murder, Otto stole cocaine worth $3,000 from the defendant's drug "stash." When confronted by the defendant, Otto denied he stole the drugs and suggested that either the victim or another of the defendant's drug customers had taken them. Later that day, as Otto and the defendant were walking by the railroad tracks, the defendant struck Otto in the back of the head with a piece of wood, and when Otto fell to the ground, the defendant struck him some more about the face and neck. Otto never admitted to the defendant that he stole the defendant's drugs.

The defendant asserts that the prejudicial effect of Otto's

testimony concerning the incident in which the defendant beat him, as well as the incident in which the defendant offered Otto cocaine in return for his assistance in kidnapping Desbiens, far outweighed its probative value.[3] We disagree.

The Commonwealth offered the testimony about the defendant's previous assaultive conduct to establish the defendant's identity as the murderer by showing a common pattern of operation by the defendant in response to drug customers who owed him money or whom the defendant believed had stolen drugs from him. In such a circumstance we require that "[t]here must be a uniqueness of technique, a distinctiveness, or a particularly distinguishing pattern of conduct common to the current and former incidents to warrant the admission of evidence of prior bad acts as tending to prove that the defendant was the person who committed the crime charged." *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 506 (1990). Among the factors to be considered, in addition to the similarity of the circumstances, are the proximity in time and place between the prior event and the crime charged. See *id.* at 506 n.7.

Here, the evidence tended to show that the defendant, among a small coterie of drug customers and within a two-month period prior to and in the same general locale as the murder, violently attacked or was willing to attack, with the same types of weapons used in the murder, those people who, like the victim, were in debt to the defendant or suspected by him of stealing his drugs.

The judge considered both the probative value and the potential prejudicial effect of the evidence. He conducted both a hearing on the defense motion in limine to exclude the evidence and heard argument when the defendant renewed his objection at trial. The judge carefully reviewed all the proffered evidence and excluded some of the evidence that the Commonwealth sought to admit. Although the case is close, on this record we cannot say that the judge abused his discretion or erred as a matter of law. "Although the circumstances of the . . . offenses were not identical, we think they were sufficiently similar to justify the inference that they were the product of the same

---

[3]The defendant also claims that Otto's testimony was "a wholly irrelevant mass of detail" about Otto's drug behavior, as well as Otto's relationship with the defendant, and therefore should not have been admitted. The details of Otto's drug behavior were elicited largely by defense counsel on cross-examination. There was no error. See *Commonwealth* v. *Otsuki*, 411 Mass. 218, 236 (1991).

mind." *Commonwealth* v. *Cordle*, 404 Mass. 733, 740 (1989), *S.C.*, 412 Mass. 172 (1992), quoting *Commonwealth* v. *Bettencourt*, 20 Mass. App. Ct. 923, 925 (1985). The "incidents are so close in time and sufficiently similar as to justify the admission of the evidence and the jurors' inference in favor of the Commonwealth." *Cordle, supra* at 740.[4]

3. *Jury instructions.* The defendant claims that the judge erred in failing to (1) limit the jury's use of the prior bad acts evidence; and (2) instruct the jury that any inferences they drew had to be established beyond a reasonable doubt. Because the defendant did not object to the judge's instructions at trial, we review the challenged instructions to determine whether they created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Grant*, 418 Mass. 76, 84-85 (1994).

In considering the judge's instructions we look to the entire charge. *Commonwealth* v. *Sarmanian*, 426 Mass. 405, 408 (1998). Generally, we do not require trial judges "to deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words." *Id.*, quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 878 (1987).

a. *Instructions on prior bad acts evidence.* The defendant claims that the judge's instructions were "too sweeping and vague," because they failed to state explicitly that the jury could not use the prior bad acts evidence to prove the defendant's criminal propensities or bad character, or as a substitute for proof that the defendant murdered the victim. Nor, complains the defendant, did the instructions inform the jury on how they could consider the evidence.[5] We do not agree. The

[4]The defendant's reliance on *Commonwealth* v. *Triplett*, 398 Mass. 561, 562-564 (1986), is inapposite. In that case, the Commonwealth introduced evidence that the defendant, on trial for the murder of his mother's fiancé, lost a job because of his temper, received a less than honorable discharge from the army, and previously assaulted his mother. That evidence had no rational link to the crime for which the defendant was being tried. *Id.* at 564. The Commonwealth offered the evidence solely "to prove that the defendant had a bad temper, and, therefore, was guilty of murder in the first degree." *Id.* at 563.

[5]The judge told the jury: "Also in this case there has been evidence alleging that the Defendant . . . was a cocaine dealer; and that he had made prior threats against people that were allegedly his cocaine customers; and that, in the case of David Otto, the allegation is that he had previously committed an act of violence against Mr. Otto in regard to money owed him.

"Now the defendant is not on trial for selling cocaine or for any offense against Mr. Otto. The evidence of [the defendant's] — and I instruct you that

judge explicitly told the jurors that they "[could] not accept [the evidence] for any purpose other than [those permitted]." He also told them that the bad acts evidence was relevant only as to the defendant's state of mind, his pattern of conduct, his relationship with the victim, or his intent at the time of the victim's death. By explicitly limiting the jurors' use of the evidence, the judge provided sufficient guidance, and imparted to the jurors sufficient understanding of the improper use of the evidence. The judge also repeatedly made it clear that the defendant could be found guilty only on the basis of evidence produced in court during the trial and that the Commonwealth had to prove all the essential elements of the crime beyond a reasonable doubt. There was no error and no substantial likelihood of a miscarriage of justice.

b. *Instructions on inferences.* The defendant also assigns error to the judge's failure to instruct the jurors that any inferences they drew had to be established beyond a reasonable doubt. "There is no requirement that . . . each inference made must be proved beyond a reasonable doubt." *Commonwealth* v. *Dostie,* 425 Mass. 372, 377 (1997), quoting *Commonwealth* v. *Azar,* 32 Mass. App. Ct. 290, 309 (1992). "It is enough that [the inferences] be reasonable and possible." *Brown* v. *Commonwealth,* 407 Mass. 84, 89 (1990), quoting *Commonwealth* v. *Merrick,* 255 Mass. 510, 514 (1926). The judge's charge included language on circumstantial evidence and inferences that we have found acceptable in other cases.[6] See *Dostie, supra* at 376 n.7; *Commonwealth* v. *Schand,* 420 Mass. 783, 795 n.12

the Defendant is not charged with any other offense other than the murder of [the victim] on or about October 14th, 1994. The charges against the Defendant are limited solely to the murder alleged to have occurred on or about October 14th, 1994.

"And the evidence that [the defendant's] involvement in the sale of cocaine and alleged act [*sic*] of prior violence against others who were allegedly his customers may be used by you only if you, first, accept it as having actually occurred, and then you may use it for whatever weight you wish ·to give it only if you find it relevant to [the defendant's] state of mind, his pattern of conduct, the relationship between himself and [the victim], or the defendant's intent on or about October 14th, 1994. But you cannot accept it for any other purpose other than that, ladies and gentlemen."

[6]The relevant part of the judge's instructions stated: "Inferences are merely logical deductions, that you, the jury, may properly draw from the facts as you find them to be in this case. Remember that when you are dealing with inferences, you never have to infer anything. You may if you want to, but you

(1995). There was no error and no substantial likelihood of a miscarriage of justice.

4. *Relief pursuant to G. L. c. 278, § 33E.* We have reviewed the record and conclude that there is no reason to reduce the verdict to a lesser degree of guilt or order a new trial.

*Judgment affirmed.*

don't have to draw any inferences whatsoever. But, as I say, you may draw reasonable inferences in connection with the evidence you believe in this case.

"But you should not pile inference upon inference until the pile gets so high that it tips over logically, or the chain gets so weak that it doesn't hold together anymore. So make sure that when you run through your inferences, you check the starting point and check the ending point to make sure they're still reasonable."