## COMMONWEALTH vs. COREY J. LEONARD.

Worcester. January 5, 1999. - February 3, 1999.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & IRELAND, JJ.

*Evidence,* Prior misconduct. *Practice, Criminal,* Argument by prosecutor, Capital case.

At the trial of indictments for murder and arson, the judge properly allowed the Commonwealth to introduce evidence tending to show that the defendant had started another fire using a similar method in similar circumstances about three months before the fire that killed the victim, which was relevant to the issues of identity and motive, and the judge's limiting instructions to the jury were correct. [784-788]

At the trial of indictments for murder and arson, there was no reversible error in the prosecutor's closing argument. [788-789]

INDICTMENTS found and returned in the Superior Court Department on March 4, 1996.

The cases were tried before *Martha B. Sosman,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Anne S. Manzello,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury convicted the defendant of murder in the first degree on theories of extreme atrocity or cruelty and felony-murder, and of home invasion, armed robbery, armed burglary, confining for purposes of larceny, and burning a dwelling house. On appeal, he argues that the judge erred by admitting evidence of prior bad acts and that the prosecutor made improper comments in his closing argument. We reject the defendant's arguments and discern no basis to exercise our authority under G. L. c. 278, § 33E, to reduce his murder conviction to a lesser degree of guilt or to order a new trial on the murder indictment. Accordingly, we affirm the defendant's convictions.

The jury heard evidence of the following. Shortly after 8:30 P.M., on February 1, 1996, the Worcester police responded to a report of a fire at a Worcester residence. They discovered the

charred body of an eighty-two year old woman (victim) lying on the floor in her bedroom with her wrists handcuffed behind her. The medical examiner determined that the victim died from smoke inhalation, but that three of nine broken ribs had been broken prior to her death. Wrist muscle contusions showed that the victim had been handcuffed while she was alive. The cause of the fire was determined to be arson.

The defendant, a cocaine user, and John Harling, who sold drugs and ran a crack house, were "antagonistic friends" and brothers-in-law. Harling was occasionally hired by the victim to perform chores at her house (as was the defendant on at least one occasion), but Harling also had repeatedly swindled the victim, asking to be paid for chores he had not done. Harling had solicited several people to help him rob the victim around the first of the month, when she received checks and had "a lot of the money in her house." He had devised a plan to go to the front of the victim's house and distract her while a second person entered the house through a rear window and stole her money.[1]

In the weeks before the fire, the victim had withdrawn $3,400, mostly in cash, from her bank account. When police investigated the scene of the murder, coins were found scattered on the floor of her bedroom, and her pocketbook, found on a nearby table, was empty. A ladder was discovered under an open window at the back of the house.

A few days before the murder, the defendant acquired a pair of handcuffs like those found on the victim. He had left them on his girl friend's coffee table for her children to play with, but she noticed that the handcuffs were missing on February 1. The key, which had been left on the coffee table, opened the handcuffs found on the victim.

The defendant's girl friend indicated that the defendant was unemployed and that, on February 1, she had given him $50 to buy groceries. There was evidence that the defendant used the $50 to buy groceries. Later that day, the defendant was seen giving Harling about $300, in cash, to buy drugs. He bought more drugs with cash, in the form of both rolled and loose coins, from another acquaintance late that night. Acquaintances stated that the defendant was carrying a lot of change in his

---

[1] John Harling was also charged in connection with the incident, and he was tried separately.

pockets that night, including two old Swedish coins. The victim was of Swedish descent and had many relatives still in Sweden.

The defendant's girl friend told the police that the defendant was out all night on February 1, and when he returned he told her he had been at Harling's house, and that he had "screwed up again." She said that he cried frequently that day, and looked out the window whenever he heard a car door close. Friends stated that, while at Harling's on the night of the murder, the defendant admitted at one point, "So I lit the . . . house, so what. I want more [crack]." There was also evidence, to be discussed in more detail shortly, that the defendant had set another fire similar in nature to the fire that killed the victim about three months before the murder.

The defendant received and waived his Miranda rights, and he gave two statements to the police. The statements contained contradictory information. The jury could have inferred that the defendant gave false information to the police in the statements in an effort to divert attention from himself in connection with the murder.

1. The Commonwealth filed a pretrial motion in limine which sought a ruling that evidence could be introduced tending to show that the defendant had started another fire using a similar method in similar circumstances about three months before the fire that killed the victim. The judge conducted an evidentiary hearing on the motion in limine, considered the arguments of counsel, and concluded that the evidence could be admitted against the defendant for a limited purpose. The defendant argues that the evidence of the prior fire was improperly admitted because (a) it was not established that he had set the other fire; and (b) there were no special marks or distinctive characteristics which linked the two fires.[2] We reject his contentions.

The evidence at the voir dire held on the motion in limine showed the following. On October 31, 1995, the home of another woman was broken into and her bedroom was set on fire. This home was located at 83 Barnard Road in Worcester, which was in the general neighborhood of the home of the

---

[2]The Commonwealth argues that the defendant's trial counsel did not preserve these issues for appeal, and, as a consequence, the arguments must be considered under the "substantial likelihood of a miscarriage of justice" standard. We conclude that the objections made by trial counsel were adequate to preserve the issues for their consideration on appeal in the ordinary course.

victim in this case. We shall refer to this incident as involving the Barnard Road home and the Barnard Road fire.

Entrance to the Barnard Road home had been gained through a screened-in back porch. The lower window on the rear of the porch, closest to the lock, had been broken and the door was ajar. The defendant's fingerprint was found on the back porch window next to the door used to gain entry. The victim of the Barnard Road fire lived alone, and she was at work when the fire occurred. The fire was determined to be arson. It had originated at the foot of the victim's bed in a pile of clothing. No evidence of accelerants, nor source of ignition, was found.

The defendant lived directly across the street from the victim of the Barnard Road fire, and he had done work for her. They had had an argument over the length of time a particular job had taken, and she disputed his bills. The defendant became angry with her, and he did not return a telephone call she made to him. The Barnard Road fire occurred about one week after the defendant last worked at the house.[3]

The police spoke with the defendant after the Barnard Road fire on two occasions. The defendant admitted that he was familiar with the interior of the Barnard Road home, knew the location of the bedroom where the fire started, and also knew that renovations had been recently made inside the bedroom. The defendant told the police he had been elsewhere when the Barnard Road fire was set. He admitted to having been on the back porch of the Barnard Road home in the past to do work. When confronted with the evidence of his fingerprint, the defendant stated that he may have left it on the window when he checked to see if the window was locked while the victim was away and he was taking care of her cats. The victim of the Barnard Road fire stated that, about two months before the fire occurred, the defendant had fed her cats. The defendant was not charged in connection with the Barnard Road fire.

Before prior bad act evidence can be admitted against a defendant, the Commonwealth must satisfy the judge that "the jury [could] reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston* v. *United States*, 485 U.S. 681, 689 (1988). The Commonwealth need only show these facts by a preponderance of the evidence. See *Care &*

---

[3]The Commonwealth's motion in limine also stated that after the Barnard Road fire, the defendant had "offered to fix [the] house once [the victim of the fire] had received the insurance money."

*Protection of Laura*, 414 Mass. 788, 792 (1993), and cases cited; *Commonwealth* v. *Robinson*, 146 Mass. 571, 581-583 (1888); P.J. Liacos, Massachusetts Evidence § 4.4.8, at 170 (6th ed. 1994 & Supp. 1995). If the judge finds this standard has been met, it is thereafter for the jury to evaluate the evidence for "its weight and credit." *Commonwealth* v. *Robinson, supra* at 582. The Commonwealth must also show, as a preliminary matter, that the prior bad act evidence pertains to the defendant's knowledge, intent, motive, method, identity, or some other relevant issue at the trial, *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986), and that the prior event and the circumstances of the crime charged have similarities so as to be meaningfully distinctive, that is, that there exists a uniqueness or particularly distinguishing pattern of conduct common to the current and former incidents. See *Commonwealth* v. *Marrero*, 427 Mass. 65, 71 (1998); *Commonwealth* v. *Jackson*, 417 Mass. 830, 836 (1994); *Commonwealth* v. *Lacy*, 371 Mass. 363, 366 (1976). In addition to showing the similarity of circumstances, the Commonwealth should provide evidence that there is proximity in time and place between the prior event and the crime charged. See *Commonwealth* v. *Marrero, supra*, citing *Commonwealth* v. *Brusgulis*, 406 Mass. 501, 506 n.7 (1990). All these preliminary determinations are committed to the sound discretion of the judge who also must consider whether the probative value of the evidence is outweighed by its prejudicial effect. *Commonwealth* v. *Marrero, supra* at 67-68, and cases cited. The judge's decision "will be upheld on appeal absent palpable error." *Id.* at 68, quoting *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995).

The judge properly ruled that the Commonwealth had met its preliminary burden with respect to showing that the defendant had set the Barnard Road fire. There was no real dispute that the fire was an act of arson. In addition to that fact, the Commonwealth's evidence at the voir dire showed that the defendant had a motive and an opportunity to set the fire, that he was familiar with the Barnard Road home and its interior, and that his fingerprint had been placed near the point of the break-in to the home. The defendant's statements to the police attempting to explain why he was not implicated in the Barnard Road fire could be considered inconsistent and contrived. The dispute over how the defendant's fingerprint was placed on the window did not require a ruling that the Commonwealth had failed to

show that the defendant was the actor. On all the evidence at the voir dire, the judge could reasonably conclude that it "was up to the jury to assess the credibility of the witnesses and to determine [that fact]." *Commonwealth* v. *Anderson,* 396 Mass. 306, 313 (1985). We are not persuaded by the defendant's arguments to the contrary. The decisions he relies on are not helpful on this point.[4] What is to be stressed here is that the Commonwealth's burden was governed by a preponderance of the evidence standard, and the judge was warranted in concluding that the standard had been satisfied. Thereafter, assuming the other foundational matters are satisfied, it was for the jury to weigh the ultimate probative value of the evidence.

The judge also did not err in deciding that the evidence of the Barnard Road fire was relevant to the issues of identity and motive, and that the prior and current crimes had meaningfully distinctive similarities. The defendant strenuously disputes the latter point, stressing, as might be expected, circumstances that tend to distinguish the two incidents. But enough similarities existed to justify the judge's decision to admit evidence of the Barnard Road fire. Both fires started in the victims' bedrooms at, or near, beds in a pile of clothing or other articles. In both fires no incendiary devices were found, nor were any accelerants discovered. The defendant knew the layout of the interiors of the victims' homes. The fires were also linked by a close time frame and the circumstances that the homes involved were in the same general area in Worcester and in a location near where the defendant lived. In addition to these considerations, the judge also noted that, when arsons committed for insurance fraud are excluded, "the number of arsons [is] extraordinarily rare." The judge went on to state: "[T]his defendant had done

---

[4]In two decisions cited by the defendant, *Commonwealth* v. *Morris,* 422 Mass. 254, 259-260 (1996), and *Commonwealth* v. *Estremera,* 37 Mass. App. Ct. 923, 924 (1994), fingerprint evidence alone was found insufficient to satisfy a finding of guilt beyond a reasonable doubt, which is not the standard relevant to the admissibility of the evidence here. In a third case, *Commonwealth* v. *Kosior,* 280 Mass. 418, 423 (1932), we concluded that the admission of a statement made by an accused arsonist to a police officer, that he had collected on his insurance claims for other fires, to be prejudicial error. We noted, "Even if the earlier fires had been criminally set by the defendant, the fact could not have been shown, because of the rule that generally the commission of independent crimes in the past is no evidence of guilt of the crime charged." *Id.* The evidence of the Barnard Road fire in this case was not offered for that purpose; it was offered to show identity and motive. See *Commonwealth* v. *Helfant,* 398 Mass. 214, 227-228 (1986).

work for both of the victims . . . he is the one thing that these two victims . . . have in common." We think the judge could properly have discounted the dissimilarities articulated by the defendant and concluded that they were not "so significant that they 'prevent the original episode from functioning as an identifying factor.' " *Commonwealth* v. *Jackson, supra* at 841, quoting *Commonwealth* v. *Cordle*, 404 Mass. 733, 748 (1989) (Liacos, J., dissenting), *S.C.*, 412 Mass. 172 (1992).

Finally, the judge carefully instructed the jury, generally in keeping with the request for instruction made by the defendant's trial counsel, about the limited purpose of the evidence and that they were not to consider it unless they independently found that the two incidents were linked by distinctive similarities.

2. The defendant asserts that the prosecutor in his closing argument improperly exploited the evidence of the Barnard Road fire to urge the jury to find him guilty of the victim's murder. The defendant refers to the prosecutor's statement that the jury should "look at [the Barnard Road] fire . . . [b]ecause [it shows] what type of guy is going to light this woman on fire . . . on February 1," and the additional statement that the Barnard Road fire indicated "how [the defendant] reacts when he gets angry." The defendant's trial counsel objected to the "what type of guy" comment, but not to the remark about how the defendant "reacts when he gets angry."

The comment that was objected to was made by the prosecutor in the context of his effort to persuade the jury that the defendant had set the Barnard Road fire and that the jury could consider the evidence of that fire in deciding whether the defendant was "involved" in the February 1 incident. There was a basis in the evidence for the prosecutor to argue that, if the jury found that the defendant was implicated in the Barnard Road fire, they could also find that he had acted out of anger. The prosecutor's comments may have been poorly phrased. The prosecutor did not argue that the defendant had a bad temper and therefore was guilty of murder. He did not suggest that the jury should find that the defendant had set either fire because he was a bad character. The prosecutor was careful to explain to the jury that the Barnard Road fire "is only really a sidelight issue for you because you don't have to say guilty or not guilty for that case, it is no charge on the verdict slip for you, it is just evidence that helps you decide on February 1 did [the defendant] light [the murder victim's] house on fire." As has been

mentioned, the judge gave a careful limiting instruction to guide the jury in their evaluation of the bad act evidence. Nothing was said by the prosecutor in this part of his closing that calls for a new trial.

3. We have examined the entire record and find no basis to grant relief under G. L. c. 278, § 33E, to the defendant on the murder conviction.

*Judgments affirmed.*