COMMONWEALTH vs. T'SHOMBE RISE.

No. 99-P-211.

Suffolk. May 4, 2000. - February 9, 2001.

Present: Brown, Perretta, & Greenberg, JJ.

*Delinquent Child. Jurisdiction,* Delinquent child, Transfer hearing. *Practice, Criminal,* Transfer hearing, Juvenile delinquency proceeding, Argument by prosecutor. *Constitutional Law,* Search and seizure, Self-incrimination. *Search and Seizure,* Warrant, Standing to object. *Evidence,* Prior misconduct, Motive.

A juvenile court judge's findings and conclusion that a juvenile should be tried as an adult were properly based on a thorough and detailed review of the statutory factors set out in G. L. c. 119, § 61. [838-840]

A criminal defendant lacked standing to challenge the search of premises in which he had no expectation of privacy and, in any event, probable cause existed for the issuance of the warrant. [840-841]

A fourteen year old juvenile's right to remain silent was not implicated by a routine booking inquiry concerning his address. [841-842]

Evidence that the defendant had fired a rifle into an apartment, the same rifle later determined to be a murder weapon, was properly introduced in evidence at the murder trial. [842-843]

Evidence was properly admitted at a murder trial that the defendant's motive in killing the victim was to prevent the victim from testifying against the defendant's cousin in an unrelated case; the judge properly excluded as collateral the defendant's proffered evidence that others had a motive to kill the victim. [843-844]

At a murder trial, remarks of the prosecutor conformed to the law and the evidence, and did not amount to an improper vouching for the credibility of a witness. [844-845]

INDICTMENTS found and returned in the Superior Court Department on March 30, 1995.

COMPLAINT received and sworn to in the juvenile session of the Dorchester Division of the District Court Department on March 31, 1995.

Following a transfer hearing in the juvenile session before *R. Marc Kantrowitz,* J., a pretrial motion to suppress evidence was

heard in the Superior Court Department before *Robert W. Banks,* J., and the cases were tried before *Thomas E. Connolly,* J.

*Jonathan Shapiro* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant, a juvenile, appeals from his convictions in the Superior Court of murder in the second degree (of Kurt Headon), illegal possession of a rifle, and assault and battery by means of a dangerous weapon (against Michael Hodge).[1] On appeal, the defendant argues that the District Court judge erred in ordering that he be tried as an adult. The defendant also claims that a Superior Court judge erroneously denied his motion to suppress a .30 caliber rifle seized pursuant to a search warrant, and that the trial judge erroneously admitted evidence of a statement made during booking, erroneously admitted evidence of subsequent bad acts, unfairly and incorrectly handled evidence relative to motive, and refused to give a curative instruction after the prosecutor vouched for the credibility of a Commonwealth witness.

On October 7, 1994, Kurt Headon was fatally shot while seated in his car outside his home at 7 Irma Street in the Dorchester section of Boston. An autopsy revealed that he suffered four gunshot wounds to the head. Headon's friend, Michael Hodge, who had been sitting with him in the car, was shot in the shoulder. Several witnesses observed the defendant, dressed in black, ride past them on a bike immediately prior to the shooting. Four young men observed the defendant park his bike, go inside 44 Arbutus Street, and then come out and begin walking toward the corner of Irma Street. The four witnesses noticed that the defendant was holding something under his jacket and was walking toward Headon's parked car. At the same time, the same witnesses observed Levar Rise, the defendant's cousin, walk toward Headon's car and begin shooting a handgun.[2] The defendant removed a rifle from under his jacket and also began shooting at the car. The defendant and Levar Rise fled toward Callender Street after the shooting.

Detective George Foley recovered .30 caliber and .38 caliber

---

[1]The defendant was acquitted of the charge of armed assault with intent to murder Hodge.

[2]Levar Rise was tried separately, and was convicted of first degree murder. His appeal is pending before the Supreme Judicial Court.

shell casings and bullets from the scene. Ballistics tests determined that all the .38 caliber ammunition was discharged from the same gun and similarly all the .30 caliber ammunition was discharged from another weapon. Nearly a month later, on November 1, 1994, the police recovered .30 caliber casings matching those found at the murder scene from outside the home of Sheila Corbin. Corbin had reported that, upon return- · ing home from an incident involving a physical altercation with the defendant and Levar Rise, she had discovered that several gunshots had been fired into her apartment.

The following evening the defendant was arrested and charged with the shooting at Corbin's apartment. At booking, the defendant reported that his address was the second floor of 76 Greenwood Street. A search warrant issued authorizing a search of the entire house at that address. Upon executing the warrant, the police found the defendant's mother sitting on a wicker couch on the first floor. A search of the couch revealed a .30 caliber rifle that ballistics tests later revealed as the gun that had discharged the shell casings found at both the murder scene and Sheila Corbin's apartment.

1. *Juvenile transfer.* "A transfer hearing is held to determine whether the child presents a danger to the public, and whether the child is amenable to rehabilitation within the juvenile justice system." *Commonwealth* v. *O'Brien*, 423 Mass. 841, 845 (1996) (citation omitted). "General Laws c. 119, § 61, sets forth the requirements governing a transfer hearing."[3] *Commonwealth* v. *Berry*, 420 Mass. 95, 99 (1995). "There is no specific require- ment that a judge weigh these factors in a certain manner or achieve some predesigned balance." *Ward* v. *Commonwealth*, 407 Mass. 434, 438 (1990), quoting from *A Juvenile* v. *Com- monwealth*, 370 Mass. 272, 282 (1976).

The defendant argues that the District Court judge, sitting in a juvenile session, erred in ordering that he be tried as an adult pursuant to G. L. c. 119, § 61.[4] The defendant contends that the judge did not appropriately consider all of the relevant statutory

[3]In 1996, the Legislature enacted the youthful offender act, St. 1996, c. 200, and repealed G. L. c. 119, § 61. *Commonwealth* v. *Clint C.*, 430 Mass. 219, 222 (1999). However, this appeal is governed by the former statute, prior to its being repealed.

[4]The defendant was born November 12, 1979, and was fourteen years of age at the time of the murder.

factors[5] but rather based his decision exclusively on the nature of the crime.

In that light it is our task to "determine whether there has been a 'material failing in the prescribed steps leading to the issuance of the order of transfer.' " *Commonwealth* v. *O'Brien*, *supra* at 846, quoting from *Commonwealth* v. *Matthews*, 406 Mass. 380, 384 (1990). *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. 33, 35-36 (1998).

We reject the defendant's argument that the judge improperly based his decision solely on the seriousness of the crime. The judge's subsidiary findings, for which there is ample support in the record, and conclusions set out in a twenty-six page memorandum of decision reveal a thorough and detailed consideration of all of the statutory factors.[6]

"[A] judge may 'attach substantial significance to the seriousness of the offense, as this does bear on both the danger to the public and an individual's prospects for rehabilitation. Seriousness of the offense is also included as an element in the statute . . . .' " *Ward* v. *Commonwealth, supra* at 439, quoting from *Commonwealth* v. *Costello*, 392 Mass. 393, 397 (1984) (citations omitted). The judge here, however, cited numerous instances of past behavior and other events that undermined the defendant's potential for rehabilitation, including (1) the defendant "deliberately schemed the assassination of Kurt Headon," (2) a juvenile record of at least four other separate offenses, (3) "[a] review of his probation report indicat[ing] that Tshombe did not appear for appointments, did not participate in community service, and was not attending school as required,"

---

[5] The statutory factors are "the nature, circumstances, and seriousness of the alleged offense; the child's court and delinquency record; the child's age and maturity; the family, school and social history of the child; the success or lack of success of any past treatment efforts of the child; the nature of services available through the juvenile justice system; the adequate protection of the public; and the likelihood of rehabilitation of the child." G. L. c. 119, § 61, as amended by St. 1991, c. 488, § 3.

[6] Some fifteen pages of the memorandum are devoted to subsidiary findings on the factors that undermined the defendant's potential for rehabilitation, including, but not limited to, the abysmal academic attendance record and the continued behavioral problems the defendant exhibited when he did attend school, e.g., swearing at teachers, urinating in public, harassing other students, and other such disruptive conduct. The judge also made reference to the defendant's lack of positive family support, his court and delinquency record, and his repeated misconduct while in the custody of the Department of Youth Services.

(4) the defendant's mother's failure to "follow through with the defendant on important school issues," and (5) poor school performance. See in this regard *Commonwealth* v. *Berry*, 420 Mass. at 99-100. The judge was also within his discretion to discount the testimony proffered by the defendant's expert, Dr. Ebert, reasoning that the defendant's persistent misconduct negated Dr. Ebert's conclusions. There was no error.

2. *Motion to suppress.* The defendant contends that the Superior Court judge erred in denying his pretrial motion to suppress evidence of the .30 caliber rifle seized pursuant to a search warrant. According to the defendant, the search warrant was constitutionally and statutorily (see G. L. c. 276, §§ 1, 2) defective for lack of specificity or particularity in the description of the place to be searched.

On November 2, 1994, Boston police officers executed a warrant for 76 Greenwood Street, described in the warrant as a "2½ story beige wooden dwelling." The two weapons allegedly used by Levar Rise and the defendant in the murder of Kurt Headon, particularly a .30 caliber rifle, any related ammunition, as well as items to show ownership or control of the premises, were the objects of the search. The defendant claims that the structure at 76 Greenwood Street contains two distinct apartments, both of which were searched upon the execution of the warrant. The defendant introduced evidence at the suppression hearing that Boston police Detective John Martel, the affiant, knew at the time of his application for the warrant that 76 Greenwood Street contained two apartments but failed to attest to this in his affidavit. Compare *Commonwealth* v. *Luna*, 410 Mass. 131, 135-137 (1991).

The motion judge found that "Martel had probable cause to search both units within 76 Greenwood Street." Compare *Commonwealth* v. *Erickson*, 14 Mass. App. Ct. 501, 504 (1982). That finding is not clearly erroneous, given the affiant's belief derived from his "knowing the Rise family for the past four years" and his observations on prior visits to the premises that "members of the Rise family occupied the entire premises." See *Commonwealth* v. *LaPlante*, 416 Mass. 433, 439 (1993). This opinion was buttressed by the other recitations in the affidavit.[7]

In any event, we fairly could conclude that the defendant

---

[7]Detective Martel averred, among other things, that witnesses saw both the defendant and Levar Rise run toward that structure after the shooting at Cor-

lacked standing to challenge the search. A defendant may be granted automatic standing to challenge the seizure of property in the possession of another at the time of the search if "possession of the seized evidence at the time of the contested search is an essential element of guilt." *Commonwealth* v. *Amendola*, 406 Mass. 592, 601 (1990). See *Commonwealth* v. *Lodge*, 431 Mass. 461, 474-475 (2000). The automatic standing rule, however, "does not relieve a defendant who unlawfully intruded on someone else's reasonable expectation of privacy from establishing that he had a reasonable expectation of privacy himself." *Commonwealth* v. *Carter*, 424 Mass. 409, 412 (1997).

Here, the defendant in answer to a routine booking question stated that he lived on the second floor of 76 Greenwood Street.[8] The gun was found in the first floor apartment in a room that the defendant claimed was rented to a person not connected to the suspected offenses.[9] A defendant may not "assert the constitutional rights of someone in no way involved with his allegedly criminal conduct." *Id.* at 411 n.3. Therefore, the defendant lacked standing to challenge the search of the first floor apartment at 76 Greenwood Street.[10]

3. *Booking statement.* Detective Martel testified that the defendant gave his address as the second floor of 76 Greenwood Street when he was being booked on November 2, 1994. The defendant contends that the admission of his address was erroneous because the statement was elicited before he was advised of his Miranda rights.[11]

The trial judge ruled that the booking officer's request for the defendant's address properly fell within the "routine booking

---

bin's house and that moments later Levar was pat frisked in front of the structure, and no weapon was found. Martel also averred that a letter carrier confirmed that the defendant and Levar lived at this address.

[8]We note in passing that the defendant's affidavit in support of his motion to suppress recites, "I have never lived at 76 Greenwood Street."

[9]The defendant has a dilemma: if the structure is, in fact, two separate apartments, and the defendant resides in the upper unit, he lacks standing to challenge the search of the first floor apartment; if the defendant had full access to the interior of the structure, the multi-unit character of the premises evaporates in a constitutional sense.

[10]Deciding as we do, we need not reach the question whether the admission of the .30 caliber rifle was harmless error. We are inclined to think it would have been. See *Commonwealth* v. *Perez*, 411 Mass. 249, 261 (1991).

[11]The defendant presses this point, as he must, under art. 12 of the Massachusetts Declaration of Rights.

question" exception to the Miranda rule. See *Pennsylvania* v. *Muniz,* 496 U.S. 582, 601 (1990). Even though "responses to booking questions [may be] testimonial in nature, their use would not be prohibited by art. 12 unless incriminatory evidence was obtained by compulsion." *Commonwealth* v. *Acosta,* 416 Mass. 279, 283 (1993).

In order for the response to booking question to be compelled, the booking question must be designed or reasonably likely to elicit an incriminating response. See *Commonwealth* v. *White,* 422 Mass. 487, 500-502 (1996). There is no indication here that the question of where the defendant lived would have been reasonably likely to elicit an incriminating response. At the time the defendant was booked, the police had already applied for the warrant to search 76 Greenwood Street.

Further, at the time of his booking, the defendant was fourteen years old. The police would not have been able to book the defendant without first summoning an interested adult. See G. L. c. 119, § 67.[12] See also *Commonwealth* v. *Hogan,* 426 Mass. 424, 430 (1998). We are thus not prepared to say an inquiry at booking concerning the address of a fourteen year old juvenile cannot be made. In these circumstances, the routine booking question asked of the minor defendant did not violate art. 12 of the Massachusetts Declaration of Rights.

4. *Evidence of subsequent bad acts.* The Commonwealth, over objection, was allowed to introduce evidence of subsequent bad acts allegedly committed by the defendant to show that he had access to the murder weapon. The defendant contends that this was error because the Commonwealth failed to meet its burden of proof and the probative value of the evidence was outweighed by its prejudicial effect. We disagree. See *Commonwealth* v. *Leonard,* 428 Mass. 782, 785-786 (1999).

---

[12]General Laws c. 119, § 67, as amended by St. 1991, c. 519, § 2, provides in pertinent part: "[W]henever a child between seven and seventeen years of age is arrested with or without a warrant, as provided by law, the officer in charge of the police station . . . to which the child has been taken shall immediately notify . . . at least one of the child's parents, or, if there is no parent, the guardian or person with whom it is stated that such child resides, and shall inquire into the case." It would seem only reasonable that a booking officer, in order to satisfy the statutory responsibilities and in order to complete the administrative booking process, would have to ask a juvenile who had been arrested and taken into custody where he or she lived. The defendant's claim of error thus also falters on the issue of compulsion in light of the statutory command of c. 119, § 67.

In order for evidence of other bad acts to be admissible, the Commonwealth must show by a preponderance of the evidence "that the act occurred and that the defendant was the actor." *Id.* at 785 (citation omitted). The facts are sufficient to prove, by a preponderance of the evidence, that the defendant committed the shooting into Corbin's apartment. The Commonwealth introduced evidence that there was an altercation between the defendant and Sheila Corbin on November 1, 1994, that resulted in physical violence.[13] Later that same evening, upon returning to her apartment, Corbin discovered that someone had fired bullets into her residence while she was away. Corbin called the police and the police gathered shell casings from near the apartment. Ballistic evidence from the shell casings revealed that the gun used to shoot into Corbin's apartment was the same gun used in the shooting of Headon and Hodge. Witnesses testified that they saw the defendant shoot into Corbin's apartment. Witnesses from the Headon murder scene also testified that they saw the defendant shoot at Kurt Headon with a rifle.

The defendant's claim that the prejudicial effect of the evidence outweighs the probative value is unavailing. Contrary to the defendant's contentions, the connection between the defendant, the murder of Kurt Headon, and the shooting into Corbin's apartment was not so attenuated as to preclude its admission in evidence.

5. *Evidence of motive.* The judge allowed the Commonwealth to introduce evidence regarding the defendant's motive to kill Kurt Headon, but did not allow the defendant to introduce evidence that other people might have had a motive to kill Headon. The defendant contends that the admission of the motive evidence and the denial of his request to admit similar evidence was error. There was no error in either respect.

The motive evidence allowed by the judge included testimony regarding various altercations between Kurt Headon and members of the Rise family, although none involved the defendant and Headon. There was testimony that Kurt Headon had previously broken into and stolen property from the home of the defendant's cousin, Jawana Rise, and that another of the defendant's cousins, Ray Rise, had shot Kurt Headon in retaliation and was being prosecuted for the shooting. The Commonwealth argued that the defendant's motive to shoot Headon

---

[13]The record indicates that Corbin got the better of the defendant in that altercation.

was to prevent him from testifying against the defendant's cousin, Ray.

Motive evidence is clearly admissible in a murder trial. See *Commonwealth* v. *Ashley*, 427 Mass. 620, 624 (1998). "Determination of the weight of such evidence is for the jury, and evidence which merely suggests rather than 'clearly shows' a motive for the crime may still be ruled admissible. There is no requirement that evidence [of motive] be conclusive in order to be admissible." *Id.* at 624-625, quoting from *Commonwealth* v. *St. Germain*, 381 Mass. 256, 271 (1980).

Here, the evidence supported a reasonable inference that the defendant was aware of Headon's alleged burglary and his pending testimony against Ray Rise. There was testimony that the four Rise cousins frequented the same areas and frequently discussed the burglary. Ray Rise's court proceedings were matters of public record. The evidence suggested a motive for the shooting of Headon.

The judge did not err in excluding the defendant's proffered evidence that other people had a motive to kill Headon.[14] Evidence offered by the defendant to show that others had motive to commit the crime "poses a real threat of prejudice, especially the risk of confusing jurors by diverting their attention to wholly collateral matters involving persons not on trial." *Commonwealth* v. *Rosa*, 422 Mass. 18, 22 (1996). Here, the defendant sought to introduce motive evidence relating to events wholly collateral to the crime charged without any evidence to suggest that either of the individuals named actually committed the crime in question.

6. *Closing argument.* In his closing argument, defense counsel argued that a Commonwealth witness, Jerome Davis, was not credible because he was motivated to aid the prosecution in return for favorable consideration at his pending probation hearing. The prosecutor responded by stating that this was not true and, if it were, he would have told the jury "because there is a legal obligation" for him to do so.[15] The defendant contends that the prosecutor's remarks constituted improper vouching for Davis's credibility, and that the court erred by refusing a cura-

---

[14]The defendant sought to show that Headon testified against two men not connected to this case in any way.

[15]The prosecutor argued as follows: "The one thing that [counsel] forgot to mention, of course, is that if [Davis] was getting anything from the Com-

tive instruction after the prosecutor's statements. Cf. *Commonwealth* v. *Pearce*, 427 Mass. 642, 644 (1998).

The defendant's argument is unavailing. The prosecutor's statement was not a personal belief in the credibility of the witness but, rather, an accurate statement of the law and evidence. See *Commonwealth* v. *Schand*, 420 Mass. 783, 791 (1995), citing *Giglio* v. *United States*, 405 U.S. 150 (1972) (prosecutor has a legal duty to disclose any promises offered by the government to a witness).

*Judgments affirmed.*

---

monwealth, me, you would be told that because there is a legal obligation.

"I wish I had the power all these defense attorneys suggest we have that I could walk down the hall and pardon people left and right but it simply doesn't happen. He is getting nothing, otherwise you would have heard about it. To quote [counsel], 'It's not like that.' It's not like that because it isn't."