## COMMONWEALTH vs. TEVIN F. NOBLE.

Norfolk.    April 2, 1987. — July 2, 1987.

Present: BROWN, PERRETTA, & DREBEN, JJ.

*Practice, Criminal,* Motion in limine. *Evidence,* Intent, State of mind, Bias of government witness, Cross-examination.

At the trial of criminal complaints, the allowance of the Commonwealth's motion in limine to exclude certain evidence was error, where the effect was to limit unfairly the scope of the defendant's cross-examination of the Commonwealth's witnesses and to deny the defendant opportunities to demonstrate bias and to develop favorable evidence. [421-422]
Discussion of procedure in criminal cases with respect to motions in limine. [422-423]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on October 9, 1984.

On appeal to the jury session of the Dedham Division, the case was tried before *Charles E. Black,* J.

*Alfred E. Nugent* for the defendant.
*Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth.

BROWN, J.    The defendant appeals from his convictions by a jury of assault and battery on two police officers. We need only address one of the defendant's two principal claims of error.[1]

The defendant asserts that by allowing nearly all of the Commonwealth's motion in limine[2] the trial judge unfairly restricted his direct and cross-examination of witnesses called by the respective sides. As we think that the scope of the restrictions allowed was too broad, the defendant is entitled to a new trial.

---

[1] Noble also claims that the trial judge erred in his instructions to the jury.

[2] The motion was apparently denied with respect to paragraph 4 (b).

In certain particulars, the allowance of the Commonwealth's motion restricted the scope of the defendant's cross-examination of one of the officers (1) as to whether that officer had called the defendant a "f---ing piece of trash" and (2) as to whether a key defense witness had had social relations with the younger sister of that officer's wife.[3]

A defendant must be given the opportunity to establish even a tenuous defense if his right to have his day in court is to be guaranteed. Here the principal result of the Commonwealth's motion in limine, as applied (see *Commonwealth* v. *Hood*, 389 Mass. 581, 596 [1983] [Liacos, J., concurring]), was to limit unfairly in advance, and without knowledge of what evidence might be offered, the scope of the defendant's cross-examination of the Commonwealth's witnesses and thus effectively deny the defendant opportunities to demonstrate bias and develop favorable evidence.

In his defense, the defendant attempted to show that he was the victim, not be aggressor, in a scuffle. Evidence of the officer's allegedly hostile statements directed towards the defendant could be probative of the officer's state of mind and, as such, admissible. See *Commonwealth* v. *Van Liew*, 14 Mass. App. Ct. 662, 667 (1982). Cf. *Commonwealth* v. *Ferreira*, 381 Mass. 306, 310-311 (1980); *Commonwealth* v. *Lowe*, 391 Mass. 97, 103-106 (1984). Liacos, Massachusetts Evidence, 348-350 (5th ed. 1981).

The defendant also was entitled to show that one of his primary accusers harbored a particular bias towards the defendant's witnesses. See *Commonwealth* v. *Piedra*, 20 Mass. App. Ct. 155, 156 (1985). See also *Commonwealth* v. *McNickles*, 22 Mass. App. Ct. 114, 118 (1986). "When a possibility of bias exists . . . even if remote, the evidence is for the jury to hear and evaluate." *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985).

The purpose of a motion in limine is to prevent irrelevant, inadmissible, or unduly prejudicial matters from being offered

---

[3] The specific areas of inquiry foreclosed by the judge's ruling are set out in the appendix to this opinion.

or admitted in evidence. *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 n.2 (1981). Such a motion should be thoughtfully crafted by the movant and carefully evaluated by the judge to determine if it serves "a useful purpose." See and compare *Commonwealth* v. *Burke*, 390 Mass. 480, 481 n.1 (1983). See also *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. 314, 324 (1982). A judge should not, ordinarily, allow a motion in limine "which serves to exclude, in advance of its being offered, potential evidence of the defense." *Commonwealth* v. *Hood*, 389 Mass. at 595 n.5. *Boston* v. *Board of Educ.*, 392 Mass. 788, 797 n.8 (1984) ("[T]he better course is for the judge to deny motions in limine which seek exclusion of an area of potential evidence"). A judge is well advised to defer ruling on such a pretrial motion to the time when the evidence in question is about to be offered so that he or she may then decide its admissibility on the basis of evidence admitted to that point.[4] But see *Commonwealth* v. *Diaz*, 383 Mass. 73, 81 (1981) (ruling on motion to bar impeachment of defendant through prior convictions "should occur at an early moment"). Here, as a result of the premature allowance of the Commonwealth's motion the trial judge impermissibly "choked off" the presentation of what appeared to be a valid defense. *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. at 324. If the proffer of evidence had been made and ruled on in the course of trial, its relevance might have become obvious to the trial judge. See *Commonwealth* v. *Hood*, 389 Mass. at 595 n.5. On the other hand, perhaps its doubtful admissibility would then have become apparent.

*Judgments reversed.*

*Verdicts set aside.*

---

[4] Counsel should advise the judge when that point is reached so that the hearing and decision can be made in that setting.

APPENDIX.

Paragraph 4 (a), (c), (d), (e), and (f), of the motion in limine (see note 2 *supra*) goes to the core of the matter the Commonwealth sought to exclude from the hearing of the jury:

"4. It is the belief of the Commonwealth that in the course of the cross examination of the Commonwealth's witnesses, or in the defendant's case in chief, an attempt will be made to offer evidence by the defendant to establish the following:

  a) An inference by question that the reason Lt. Wright left the M.D.C. police to join the Braintree department was because of 'brutality' and/or 'arrest procedures of prisoners, when Lt. Wright made that transfer some ten years ago.'

*     *     *

  c) A question to Lt. Wright during cross-examination as to whether he called the defendant a 'fucking piece of trash', which the officer denied, and which was never established in the defendant's case in chief in the trial below.
  d) A question to Lt. Wright during cross-examination as to the fact that defense witness Jeffrey Downey had social relations with the Lieutenant's wife's (then fiance) younger sister, of which relationship Lt. Wright was unaware prior to the trial of this matter in the court below.
  e) Evidence as to what took place after the alleged incidents of assault and battery of the two police officers named above had concluded, namely when two other Braintree police officers arrived in the cell block area to move the defendant to a more secure cell from Cell Number 5, which was used primarily for storage by the police department at the time of the alleged incidents.
  f) Reference either during the course of the trial or in closing argument by defense counsel that to hold the defendant over a long weekend in a jail cell without windows or clocks pursuant to an outstanding default warrant for a motor vehicle violation amounted to 'psychological torture' of the defendant in the absence of expert testimony to that conclusion or any reasonable inference that could be drawn to that effect from the evidence produced."