## Commonwealth *vs.* Robert A. Botticelli.

No. 99-P-955.

Middlesex. November 6, 2000. - June 8, 2001.

Present: Jacobs, Kaplan, & Gillerman, JJ.

*Evidence,* Prior misconduct, Relevancy and materiality, Photograph. *Practice, Criminal,* Motion in limine, Record, Loss of evidence by prosecution, Jury and jurors, Challenge to jurors.

At the trial of a defendant charged with assault and battery of a woman who had accepted an offer of a ride in the defendant's automobile, the judge did not err in admitting the testimony of another woman describing an incident closely proximate in time and circumstances to the charged assault in the present case, and describing conduct by the defendant closely similar to the present incident, where the probative value of the testimony outweighed its prejudicial impact. [804-805]

The record of a criminal trial did not support the defendant's claim that the judge refused to permit him to present witnesses to rebut the testimony of a certain witness and, where there was no ruling by the judge on this matter, nothing was brought to this court for review. [805-808]

At a criminal trial, there was no error in the judge's denial of the defendant's motion to dismiss the indictments or, alternatively, to strike the testimony of witnesses who had been shown a photograph array that could no longer be found, where there was no showing that the lost array constituted exculpatory evidence. [808-809]

At the trial of a defendant charged with an assault and battery of a woman, where the defendant used six of his seven peremptory challenges against women, who at that time constituted one-half of the fourteen jurors in the panel, the judge, who suspected a pattern of exclusion because of their gender, did not abuse his discretion in asking defense counsel to provide reasons, concluding the reasons were "sham excuses," and denying the defendant's motion for a mistrial. [809-810]

Indictment found and returned in the Superior Court Department on December 31, 1986.

The case was tried before *John P. Sullivan,* J.

The case was submitted on briefs.

*Elliot M. Weinstein* for the defendant.

*Kevin J. Curtin*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. The defendant appeals from his conviction by a Superior Court jury in April, 1989,[1] of assault and battery.[2] We affirm the conviction.

1. *Background.* The victim testified essentially as follows. In the early morning hours of September 18, 1985, she and the defendant, whom she recalled having met once less than a year before, left a lounge in Chelsea. She wanted to go to a store to buy some personal items and the defendant offered her a ride in his car, a two door Cadillac Eldorado, light blue with a white roof. When he took a route away from a nearby store, she asked him why he was not stopping, and he stated they were going to "someone's house." He took her to an apartment where they each used some cocaine he provided. After she asked to be taken to her motel, they left in the defendant's car. When she protested after the defendant apparently took a wrong turn, he stopped the car, struggled with her, and "grabbed" her throat, "[s]queezing" it. The next thing she remembered was that the tights she had been wearing were wrapped around her throat,

[1]The record reflects significant delays in the progress of this case. Because of numerous continuances, the trial was held in 1989, about three and one-half years after the charged assault. The defendant was sentenced in May, 1989, and timely entered a notice of appeal to this court.

The defendant thereafter sought a stay of execution of sentence, which was denied on May 31, 1989. On July 31, 1989, a single justice of this court, acting on a motion for reconsideration, granted a stay of sentence subject to expeditious filing of a brief "on the due date."

For reasons unexplained in the record, the transcripts were not received in this court until May, 1999, at which time the case was entered on our docket. The Superior Court docket indicates that the three court reporters involved with the trial were all notified on May 18, 1989, to prepare the transcripts. Those transcripts are not dated, but one reporter stated in her certification that her commission as a notary public would expire in March, 1995, indicating she finished her transcripts before that date.

The defendant's brief was filed on August 3, 1999, and the brief of the Commonwealth on November 18, 1999. Oral argument was held on November 6, 2000.

[2]The defendant was found not guilty of charges of assault with intent to murder, and of kidnapping. He was sentenced to two and one-half years in a house of correction, and appears to have been incarcerated from June 5, 1989, at least until the docketing on August 2, 1989, in the Superior Court, of the stay issued by this court.

the car was moving, and the defendant was repeatedly preventing her from unlocking her door. As the defendant was driving into a cemetery in Everett, she jumped from the car and hid in some bushes until she heard the defendant drive away. An early morning passerby saw her and called for an ambulance. The victim had bruises on her face, redness and swelling around her neck, and injury to her left eye, requiring a hospital stay of five days.

2. *Alleged improper admission of prior misconduct.* The defendant, who claimed misidentification at trial, argues it was reversible error to admit the testimony of Heidi Generazzo, offered over objection, and describing an incident of assault on her by the defendant less than one month earlier. Generazzo testified that, on August 28, 1985, she and some friends had been driven to the Revere Beach area by the defendant, with whom she previously had been acquainted. At about 10:30 P.M., she stated she wanted to buy some cigarettes, and the defendant gave her a ride in his car, a two door Cadillac Eldorado, light blue with a white top, but drove past a nearby store and stopped farther "down the beach." They "smoked something" she said was the defendant's PCP. After some conversation she "blacked out," remembering nothing further until she woke up about 12:30 A.M. that night on the front lawn of her home. She stated she had a "big black eye," her shirt was ripped, and her pants were unbuttoned and unzipped.

Evidence of prior misconduct may be admitted to show "a common scheme, pattern of operation, [or] identity," if relevant to the charged offense, and if its probative value outweighs its prejudicial impact. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986), and cases cited. Generazzo's testimony was relevant to the issue of the defendant's identity in that she described an incident closely proximate in time and circumstances to the charged assault in the present case, and described conduct by the defendant closely similar to the present incident. Her testimony was admissible provided it was not unduly prejudicial. As required in *Commonwealth* v. *Leonard*, 428 Mass. 782, 785-786 (1999), the Commonwealth's evidence demonstrated that (1) an assault on Generazzo occurred, and the defendant was responsible; (2) that the prior act was relevant to

his identity in the present case; and (3) the assault on Generazzo had such similarities with the charged assault in this case as to be "meaningfully distinctive" conduct.[3] Although the judge made no express determinations on these requirements, and the defendant does not argue that he was required to do so, these matters were committed to his sound discretion. Moreover, before Generazzo testified, the judge gave, as requested by the defendant, an instruction on the use of that testimony "for the limited purpose of identification." "Such an instruction tends to offset any improper prejudicial effect of evidence that might be thought to show the defendant's bad character or propensity for violent acts and focuses the jury's attention on the proper application of the evidence." *Commonwealth* v. *McGeoghean*, 412 Mass. 839, 842 (1992). In his jury charge, the judge again instructed the jury on the limited use of the evidence of the prior incident. Jurors are presumed to follow such instructions, "effectively negating any prejudice to the defendant." *Commonwealth* v. *Francis*, 432 Mass. 353, 359 (2000).

"When reviewing a trial judge's decision to admit [such evidence] to show identity, we inquire whether the judge committed palpable error." *Commonwealth* v. *Kater*, 432 Mass. 404, 415 (2000), and cases cited. We perceive no error in the judge's implicit determination in the circumstances that the probative value of Generazzo's testimony outweighed its prejudicial impact, and no error in his denial of the defendant's motion to strike the testimony.[4]

3. *Alleged error in refusing "rebuttal" testimony.* The record

---

[3]There is no merit in the defendant's assertion that "it is inconceivable to construe [a] single isolated event as evidencing a pattern of conduct." Particularly when identity is in issue, it is the nature of the conduct common to another proximate event and the charged crime, and not the number of events, which is determinative of a "distinguishing pattern of conduct." See *Commonwealth* v. *Leonard*, 428 Mass. 782, 786 (1999) (evidence of one prior incident admitted on issues of identity and motive in subsequent case). For other cases of a single prior incident, see *Commonwealth* v. *Jackson*, 417 Mass. 830, 835 (1994); *Commonwealth* v. *Kater*, 432 Mass. 404, 414-416 (2000). No case requiring more than a single prior incident has been called to our attention.

[4]There is no merit in the defendant's assertion that the prosecutor's reference in closing argument to the absence of a rape was improper. That argument was confined to a comparison of the similarity of the acts in the incidents involving the victim and Generazzo, and he characterized, as a last act, "choos-

does not support the defendant's claim that the judge refused to permit him to present witnesses to rebut Generazzo's testimony. The first mention of such witnesses appears in the defendant's motion in limine, filed between the second and third days of the trial, and directed at preventing Generazzo from testifying. At the hearing on that motion, defense counsel, who also represented the defendant in a District Court prosecution founded on Generazzo's complaint, indicated his intention to call as trial witnesses several persons who had testified in that proceeding.[5] While the judge indicated counsel had a right to call witnesses to respond to unexpected evidence at trial, he stated that he did not take "very seriously" the request for witnesses to rebut the credibility of Generazzo, who defense counsel knew was on the Commonwealth's pretrial witness list. Defense counsel nevertheless restated his intention to call additional witnesses and to request leave to supplement the witness list by adding five named persons, and the prosecutor did not oppose the request. The hearing concluded without an express ruling by the judge.

During the motion hearing, the judge appears to have pursued the recommended "practice of informal conferences between counsel and judge, before trial and during trial, for advance discussion of matters of doubtful admissibility." *Commonwealth v. Hood*, 389 Mass. 581, 595 n.5 (1983). Contrary to the defendant's assertions,[6] the judge appropriately appears to have deferred ruling not only on permitting Generazzo to testify but

---

ing when" to stop. This is fair argument, particularly as it did not invite consideration of any crimes beyond assault and battery.

[5]There was discussion concerning whether, after a finding in the District Court of sufficient facts of indecent assault and battery on the basis of Generazzo's complaint, the case had been dismissed without opposition by the Commonwealth after appeal to the Boston Municipal Court jury session. The ultimate status of that case is not argued in this appeal, nor is it of any significance to the present case.

[6]The defendant argues that the judge "on his own precluded" the testimony of the witnesses discussed at the hearing, thus denying him his constitutional right to due process of law. As we have noted, the judge made no express rulings on the defendant's motion. Even though the judge stated that it was "unlikely" he would allow the motion, and that he did not take "very seriously" the mid-trial request for witnesses, the defendant's further characterizations that the judge "imposed his will," "took it upon himself to deny defense testimony," and "refused to allow . . . eyewitness and forensic testimony [in

also on any impeachment evidence so as to decide admissibility in the more complete context of the developing trial evidence.[7] See *Commonwealth* v. *Noble*, 24 Mass. App. Ct. 421, 423 (1987), and cases cited. Because the judge made no express ruling on the motion in limine, or on the issue of the additional witnesses, the defendant was not foreclosed from attempting to call the witnesses. This is not a case where it plausibly may be argued that the judge clearly and unequivocally ruled on a motion in limine and associated issues, rendering futile any attempt, during trial, to object or offer evidence. Compare *Dolan* v. *Commonwealth*, 25 Mass. App. Ct. 564, 566 n.2 (1988).

Generazzo testified the next day as the Commonwealth's last witness. She was not cross-examined by defense counsel, and no impeachment witnesses were requested or called. The defendant moved orally to strike her testimony without stating a reason, and as indicated previously, the judge summarily denied the motion.

Even if we generously treat the defendant's motion to bar Generazzo's testimony as including an alternative request to allow the witnesses to testify, and the judge's remarks as an express denial of that request, a "motion [in limine] alone is insufficient to save appellate rights." *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 7 (1986). None of the witnesses was called to the stand, no motion was made to obtain a ruling, and the defendant has not called to our attention any explicit objection at trial that preserved this issue for appeal. Although the record contains a document entitled "defendant's offer of proof," with a clerk's notation, "[f]iled in court," and dated the day after the motion hearing, there is no indication in the transcript that defense counsel brought the document to the judge's attention. If defense counsel presumed, on the basis of the judge's remarks during the motion hearing, that the witnesses would not be

---

rebuttal]," have no support in the record. Moreover, we discern nothing in the record suggesting that the judge later in any way hindered defense counsel from pursuing his request for witnesses.

[7]Consistent with this approach the judge indicated he utilized motions in limine where he had time, as in the present case, "to become familiar . . . with the circumstances surrounding the problem, so that the court won't be making rulings on the fly, as is most often required during the course of a trial."

permitted to testify, this apparently anomalous filing of an offer of proof without an indication that the identified witnesses were offered to and rejected by the court is insufficient to establish judicial error.

Accordingly, we conclude that there is no reason "to depart from the usual rule that a matter not excepted to affords no basis for appeal," *Commonwealth* v. *Peters*, 372 Mass. 319, 324 (1977), and that because the judge never was called upon to rule on this issue, "there is nothing for this court to review." *Commonwealth* v. *Lapointe*, 402 Mass. 321, 327 (1988) ("[a]lthough the issue was discussed, the judge was never called upon to rule whether . . . evidence would, or would not, be allowed. The judge made a number of preliminary statements as to what his ruling might be, but the issue was never presented directly by the defendant to the judge. No witnesses were brought to testify. . ."). This record does not, without undue speculation, lend itself to a proper application of the miscarriage of justice standard.

4. *Alleged lost photo array evidence.* Focusing on police testimony at trial that a photo array initially shown to the victim and to three witnesses could not be found, the defendant argues that its loss made it impossible to assess the credibility of that testimony and determine what weight it should be given. After a hearing on the defendant's motion to dismiss the indictments or, alternatively, to strike the testimony of the witnesses who had been shown the array, the judge concluded that the loss was unintentional,[8] and because he concluded the identification testimony of the victim and several witnesses who identified the defendant as having left the lounge with her "was ably met by thorough cross-examination," he denied the motion. In any event, the defendant has not made a showing that the lost array constitutes exculpatory evidence. Compare *Commonwealth* v. *Neal*, 392 Mass. 1, 11-12 (1984). The judge's rulings reflect his

---

[8]The record indicates that defense counsel examined the witnesses at the probable cause hearing in this case, some three years before the trial, when the photo array was before the court, and that he raised questions about the identification procedures. Consequently, if he deemed the array exculpatory, he could have sought its preservation and introduction in the trial. Thus, the apparent loss occurred during a time when the Commonwealth had no notice to produce the array.

implicit determination that no remedial action was necessary. See generally *Commonwealth* v. *Willie*, 400 Mass. 427, 432-434 (1987).

Moreover, the defendant may have benefited by raising the issue of the lost array. Defense counsel argued the doubt which might be raised by the failure of the police to properly handle evidence, compare *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980), and the judge instructed the jury that the failure of the police to "produce certain evidence . . . could raise a reasonable doubt as to the defendant's guilt." We discern no undue prejudice to the defendant or error or abuse of the judge's discretion in the denial of the defendant's motion.

5. *Alleged error in striking defendant's peremptory challenges.* Reacting to the defendant's use of six of his seven peremptory challenges against women, who at that time constituted half of the fourteen jurors in the panel, and suspecting a pattern of exclusion because of their gender, the judge, following *Commonwealth* v. *Soares*, 377 Mass. 461, 489-491, cert. denied, 444 U.S. 881 (1979), asked defense counsel to provide reasons.[9] He concluded those reasons did "not pass muster," disallowed the six challenges, and filed a memorandum of decision concluding the reasons were "sham excuses."

Although the trial in the present case occurred well before *Commonwealth* v. *Burnett*, 418 Mass. 769, 771 (1994), the judge's inquiry anticipated the procedure outlined in that case. It is for the judge to determine whether there is a permissible or impermissible reason for a peremptory challenge, and it is within his discretion to determine whether such reasons are sufficient to establish a nondiscriminatory basis for the challenge. *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 15, cert. denied, 513 U.S. 951 (1994), and cases cited.

In his brief, the defendant cloaks the reasons he articulated[10] as within the "wide discretion" afforded a party in exercising

---

[9] "[W]e have held, based on the Massachusetts Constitution, that gender cannot permissibly form the basis for juror exclusion." *Commonwealth* v. *Fruchtman, supra* at 13, citing *Commonwealth* v. *Soares, supra* at 488-489.

[10] We repeat the reasons summarily: (1) "employment in a hospital, I'm concerned with sympathy for the injury"; (2) "simple inattentiveness" during impanelling; (3) "stern appearance"; (4) "the young woman [might] identify with the victim"; (5) "employed as a nurse . . . sympathy for the injured";

peremptory challenges. While that may appear to be so, the articulated reasons, standing alone, are not dispositive. Instead, the challenges must be exercised "[t]oward the end of 'eliminat-[ing] extremes of partiality on both sides,' " and "to eliminate prospective jurors whose unique relationship to the particular case raises the spectre of individual bias." *Commonwealth* v. *Soares*, *supra* at 485, quoting from *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965). We discern nothing on this record demonstrating a unique relationship to the case which suggests individual bias on the part of any of the jurors in issue. Accordingly, the defendant fails to show any abuse of the judge's discretion in rejecting his peremptory challenges and denying his motion for a mistrial.

*Judgment affirmed.*

---

(6) "newspaper editor and has covered the courts. . . . exposure and familiarity with the court systems."