COMMONWEALTH *vs.* CEDRIC F. WHITE.[1]

No. 01-P-410.

Worcester. April 7, 2003. - December 18, 2003.

Present: RAPOZA, COWIN, & BERRY, JJ.

*Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Stalking. Intimidation of Witness. Witness,* Intimidation. *Protective Order. Practice, Criminal,* Trial of indictments together, Jury and jurors. *Search and Seizure,* State action. *Intent. Evidence,* Prior misconduct, Threat. *Threatening. Jury and Jurors.*

The joinder at trial, pursuant to Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979), of an indictment alleging armed assault with intent to murder and assault and battery by means of a dangerous weapon with a second indictment charging stalking, intimidation of a witness, and violation of a G. L. c. 209A order was proper, and the defendant failed to demonstrate that he was prejudiced by the joinder and that severance should have been granted under Mass.R.Crim.P. 9(d), 378 Mass. 860 (1979), where the initial joinder was proper and where prior bad act evidence that was probative to the stalking charge was also probative with respect to the armed assault with intent to murder and assault and battery by means of a dangerous weapon charges, and the probative value of that evidence outweighed the prejudice that flowed from its admission. [196-200]

There was no merit to a criminal defendant's claim that the judge should have suppressed certain evidence admitted at trial, where there was no governmental action that would warrant suppression [200-201]; likewise, there was nothing to the claim that the evidence was insufficient to convict the defendant of the charge of armed assault with intent to murder, where the record contained powerful evidence of the requisite element of a specific intent to kill [201-202]; moreover, the defendant failed to preserve a claim that the jury pool from which the petit jury was drawn did not include black persons, and did not properly support the claim [202-203].

INDICTMENTS found and returned in the Superior Court Department on May 7, 1999, and July 12, 1999.

A motion to join indictments was heard by *Ralph D. Gants,* J., and the cases were tried before *Elizabeth Butler,* J.

---

[1]The defendant was tried on two indictments; in the second indictment the defendant's name appears as Cedric White.

*Robert D. Dimler* for the defendant.

*Beth R. Levenson,* Special Assistant District Attorney, for the Commonwealth.

BERRY, J. A principal issue in this appeal involves whether joinder of indictments, originally proper under Mass.R.Crim.P. 9(a), 378 Mass. 859 (1979),[2] was ultimately rendered "not in the best interests of justice" under Mass.R.Crim.P. 9(d), 378 Mass. 860 (1979),[3] because it was the very conjunction of the indictments joined for trial which, it is contended, provided a means for introduction of prior bad act evidence that otherwise was not properly admissible.

The defendant was charged under two indictments. The first charged the defendant with armed assault with intent to murder (count 1) and assault and battery by means of a dangerous weapon (count 2).[4] The second indictment charged stalking (count 1), intimidation of a witness (count 2), and violation of a G. L. c. 209A order (count 3).[5] On the Commonwealth's motion the two indictments were joined for trial. A jury convicted the

---

[2]With respect to joinder, Mass.R.Crim.P. 9(a) provides as follows:

"(1) . . . Two or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.

". . .

"(3) . . . If a defendant is charged with two or more related offenses, either party may move for joinder of such charges. The trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice."

[3]In pertinent part, Mass.R.Crim.P. 9(d)(1) provides as follows:

"(1) . . . If it appears that a joinder of offenses . . . is not in the best interests of justice, the judge may . . . order an election of separate trials of counts . . . ."

[4]The armed assault charges stemmed from a stabbing that occurred on September 29, 1998.

[5]The stalking charge stemmed from the defendant's violent acts over several years including beating the victim over the head with a garden shovel, beating her with his fists and kicking out one of her teeth, verbally threatening her, stabbing her, and violating a G. L. c. 209A order, all occurring variously in

defendant on all counts. We affirm.[6]

Because the standards that govern joinder under rule 9 and the evidentiary balancing that governs the introduction of prior bad act evidence have differences and are not entirely symmetrical, it is contended that, but for the joinder, certain evidence supporting the stalking charge, in the form of acts of violence and intimidation against the victim, could not properly have been admitted as prior bad act evidence at a separate trial on the indictment for armed assault with intent to murder and assault and battery by means of a dangerous weapon. Specifically, the defendant argues that it was the joinder of the stalking indictment that led to a pretrial ruling heralding the introduction of and providing the means for the admission during trial of this prior bad act evidence — which evidence, it is contended, lacked probativeness and was unfairly prejudicial in the trial of the armed assault offenses. From there, the defendant argues that, upon allowance of a motion in limine in favor of admissibility of the prior bad act evidence, the propriety of the original joinder fell asunder, the best interests of justice were no longer served within the meaning of Mass.R.Crim.P. 9(d), and severance of the indictments was in order.

1. *Factual summary.* The convictions arise out of a turbulent and violent dating and, from time to time, cohabitation relationship that the defendant had with the victim. Most briefly summarized, the trial evidence was that, over the course of four years, the defendant engaged in a pattern of threats and acts of violence against the victim, was convicted of certain of these crimes, pleaded guilty to others, and then perpetrated anew further acts of violence against the victim. The level of violence escalated to a final attack, in which the defendant broke into the victim's home and, from behind, stabbed her in the head with a knife, leaving a head gash, and then stabbed her in the thigh. This latest act of violence was the predicate for the return of the indictment in two counts for the armed assaults.

---

1994, 1995, 1997, and 1998. Counts 2 and 3 of the second indictment covered events on divers dates between September 29, 1998, and April 2, 1999.

[6]Beyond the joinder and interrelated prior bad act evidence issue, the defendant also presents a series of alleged judicial errors. These are addressed in part 3, *infra*.

We reserve additional factual background to be described where pertinent to the legal issues addressed.

2. *The joinder issue and the prior acts of violence and threats.* While the defendant challenges the joinder of the stalking charge with the armed assault indictment, he acknowledges that — apart from the prior bad act evidence issue — the joined indictments met the standards for related offenses under Mass.R. Crim.P. 9(a)(1). The acknowledgment is well taken, as the subject offenses comprised a series of criminal episodes connected by a singular scheme and perpetrated by a plan, common in manner and means, by which the defendant inflicted serial violent and serious harm upon the same victim. Hence, the acts comprising the indictments in this common pattern fell within the standards of Mass.R.Crim.P. 9(a)(1), which provides that offenses are "related" for purposes of joinder at trial if "[1] based on the same criminal conduct . . . or [2] aris[ing] out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." See note 2, *supra.* See generally Reporters' Notes to Mass.R. Crim.P. 9, Mass. Gen. Laws Ann., Rules of Criminal Procedure, at 520-521 (West 2002).

"Where offenses have been properly joined under rule 9(a)(1), the burden is on the defendant to show that he nevertheless has been prejudiced by the joinder, and that severance should have been granted under Mass.R.Crim.P. 9(d)." *Commonwealth* v. *Sullivan,* 436 Mass. 799, 805 (2002). Accord *Commonwealth* v. *Wilson,* 427 Mass. 336, 346-347 (1998). See generally Reporter's Notes to Mass.R.Crim.P. 9, *supra* at 521-522. The defendant has failed to carry this burden.[7] The defendant's overly fine parsing of the prior bad act evidence concerning the defendant's violent plans directed at the victim, and his proposed splintering of the probativeness of this evidence among and between the joined offenses — conceding admissibility as

---

[7]The defendant asserts that he properly presented his opposition to joinder in a manner such that the prejudicial error standard should govern. That is a questionable proposition, in that the defendant's objection was not framed in the kind of filing required by Mass.R.Crim.P. 9(d)(2). However, we need not ultimately resolve the issue because, whether reviewed by the prejudicial error standard or the substantial risk of a miscarriage of justice standard, there is not ground for reversal of the defendant's convictions.

to the stalking indictment, but contesting it as to the armed assault charges — is not tenable. Particularly is this so, as the defendant contested intent and identity in connection with the armed assaults, thereby enhancing the probative value of the prior bad act evidence. See discussion *infra.*

Our review of the trial record convinces us that the very foundation of the defendant's claim of prejudice, viz., that the prior acts of violence and intimidation were limited in probativeness to the stalking charge, and were not in any way probative with respect to the armed assault with intent to murder and assault and battery by means of a dangerous weapon charges, is faulty. This is not a case where there was any dissonance between the standards for joinder and the admission of prior bad act evidence.[8] To the contrary, in our opinion, the original joinder was legally appropriate and was not shifted by the prospect of introduction of the prior bad act evidence. As the motion judge correctly determined, this evidence was independently admissible on the armed assault indictment because, even as to the assault charges, the probative worth overbore the prejudicial effect.

In this case, the preliminary judicial determinations concerning the prior bad act evidence focused on each of the joined offenses, and included as to each joined offense the required two

---

[8] The indictment-based standards for joinder of offenses based on a related course of criminal conduct under Mass.R.Crim.P. 9(a)(1), and the evidentiary standards for the admissibility of prior bad act evidence showing common scheme and pattern have commonalities, but also have distinct characteristics, so that there is not always congruence in analysis and outcome. One important distinction is that prior bad act evidence may be admissible to show acts of the same or similar character, but that kind of similarity of act is not a predicate for joinder under rule 9(a)(1). "Massachusetts Rule of Criminal Procedure 9, . . . unlike its Federal counterpart, *does not expressly authorize joinder where crimes are of 'the same or similar character.'* . . . Thus mere similarity is not sufficient by itself to show relatedness." (Emphasis supplied.) *Commonwealth* v. *Sullivan,* 436 Mass. at 805 n.5. In contrast, prior bad act evidence may be admissible to show similarity of act by "common scheme [or] pattern of operation." *Commonwealth* v. *Helfant,* 398 Mass. 214, 224 (1986). Indeed, *Helfant,* one of the watershed cases on prior bad act evidence, includes references to manifestations of a common course or pattern of conduct, citing *Commonwealth* v. *Gallison,* 383 Mass. 659, 672-673 (1981); *Commonwealth* v. *King,* 387 Mass. 464, 472 (1982); and *Commonwealth* v. *Fleury-Ehrhart,* 20 Mass. App. Ct. 429, 431 (1985). See *Commonwealth* v. *Helfant, supra* at 224-225.

stages of evidentiary analysis to be constructed and considered prior to the admission of prior bad act evidence.

> "[The judge must initially determine] as a preliminary matter, that the prior bad act evidence pertains to the defendant's knowledge, intent, motive, method, identity, or some other relevant issue at the trial, . . . [including whether] the prior event and the circumstances of the crime charged have similarities so as to be meaningfully distinctive, that is, that there exists a uniqueness or particularly distinguishing pattern of conduct common to the current and former incidents. . . . [Second, and in addition] the judge . . . also must consider whether the probative value of the evidence is outweighed by its prejudicial effect."

(Citations omitted.) *Commonwealth* v. *Leonard*, 428 Mass. 782, 786 (1999). In this respect, our State practice mirrors the two-stage analysis employed by the Federal courts in applying Fed. R.Evid. 404(b).[9] As the United States First Circuit Court of Appeals recently expounded this evidentiary principle:

> "A two-pronged framework . . . governs the admissibility of 'bad act' evidence. First, the proffered evidence must not merely show a defendant's reprehensible character or predisposition towards knavery, but, rather, must possess some special relevance to a disputed issue in the case. Even if the evidence so qualifies, it still must run a second gauntlet; [the rule] incorporates . . . the prophylaxis of Federal Rule of Evidence 403.[10] This means that the evidence, although relevant, nonetheless must be rejected

---

[9]Federal Rule of Evidence 404(b) provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

[10]Federal Rule of Evidence 403 provides as follows:

> if its likely prejudicial impact substantially outweighs its likely probative worth."

(Footnotes and citations omitted.) *United States* v. *Sebaggala*, 256 F.3d 59, 67 (1st Cir. 2001).

Consistent with Massachusetts and Federal evidence law, in this case, both stages of analysis were addressed. With respect to the first stage, the motion judge, in making the requisite preliminary determinations, weighed probativeness to determine whether the defendant's pattern of repetitive acts of violence committed against the same victim were relevant to the offenses joined for trial. The motion judge's analysis of the reasons why these prior acts would have been probative, even if the armed assault charges were to be tried separately from the stalking indictment, touched all the points concerning probative value.[11] We encapsulate major points: the defendant's prior acts of violence underlying the stalking charge were admissible on the armed assault charges to establish motive, opportunity, intent, preparation, and plan, as well as the identity of the defendant as the perpetrator of the armed assaults — the latter being an important point because the victim was attacked from behind and the defendant contested identity. See *Commonwealth* v. *Baker*, 440 Mass. 519, 529-531 (2003) (probative value is to be weighed because improper admission of prior bad act evidence which does not have relevant connection to offenses being tried may divert jury and cause prejudice leading to unjust result).

---

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[11]In deciding that the defendant's pattern of prior misconduct underlying the stalking charge would also be admissible on the two armed assaults had these indictments been tried separately, the judge reasoned that "it is highly probative that [the defendant] had been continually beating and threatening [the victim] since December 30, 1995, that he had threatened her life even in the presence of police, that he had more than once declared his intent to attack her regardless of c. 209A orders, and that, twice before the September 29, 1998 stabbing, he had violated court orders by going to [the victim's] home within weeks after his release from custody on charges in which she was the complainant."

Thus, the first stage concerning probative value was solidly constructed. However, as noted in *Leonard* and *Sebaggala,* this first stage does not stand alone. Appropriately, then, in this case, the motion judge turned to the second stage of analysis to assess the degree and scale of inherent prejudice that may flow from the admission of such prior bad act evidence, and to weigh the probative value against that inherent prejudice in respect to each joined offense. In carefully calibrated balancing, and with due consideration to the two tenets of the defense theory of the case (a challenge both to the offense element of intent to murder and to the identity of the assailant), the judge determined — correctly, we think — that the ultimate probativeness of the evidence outweighed the prejudice. The balance struck in the judge's evidentiary determinations in favor of admission was in accord with the case law covering prior bad act evidence. See *Commonwealth* v. *Helfant,* 398 Mass. 214, 224-225 (1986); *Commonwealth* v. *Fordham,* 417 Mass. 10, 22 (1994); *Commonwealth* v. *Leonard,* 428 Mass. at 786-787. Finally, to preserve a fair balance so that the prejudice did not shift to outweigh the probative value, the trial judge delivered carefully crafted limiting instructions during the trial and in the final jury instructions. For these reasons, the defendant has not met his burden of showing that the originally proper joinder of the indictments under Mass.R.Crim.P. 9(a) was displaced.

3. *Miscellaneous other claims of error.* The other issues raised by the defendant include that certain threatening letters should not have been admitted in evidence; there was insufficient evidence to support the intent element of the conviction for assault with intent to murder; the necessary elements of stalking were not proved; the knife should not have been admitted in evidence; the defendant's arrest was improper for want of probable cause; and the defendant's constitutional rights were violated by underrepresentation of blacks in the jury pool from which the petit jury was ultimately selected, giving rise, it is asserted, to a presumption of racial bias in the petit jury. Based on our review of the record, and applying settled principles of law, we conclude that these claims of error are without merit.

a. *The threatening letters.* There is no grounding in the law for the defendant's contention that the threatening letters he

sent to the victim should have been suppressed. The Commonwealth received the letters from the victim's mother, who was checking the victim's mail in the victim's absence from the home. The mother turned the letters over to the authorities on her own initiative. (Thereafter, the victim also voluntarily turned over to the Commonwealth other letters that she had received from the defendant.) The motion judge found that no government agent participated in, or instigated, the retrieval or production of the letters. Under settled principles of law, there can be no constitutionally-based violation absent governmental action. See *Commonwealth* v. *Jung,* 420 Mass. 675, 686 (1995). See also *Commonwealth* v. *Leone,* 386 Mass. 329, 333 (1982). Hence, this private conduct did not warrant suppression.

b. *Sufficiency of the evidence.* With respect to the charge of armed assault with intent to murder, the trial judge correctly denied the defendant's motion for a required finding of not guilty. Passing the question whether this issue was properly preserved for appeal, the trial record contains powerful evidence of the requisite element of specific intent to kill. See generally *Commonwealth* v. *Henson,* 394 Mass. 584, 590-591 (1985). See also G. L. c. 265, § 18(*b*). The defendant, in a surprise attack with a knife, assaulted the victim from behind and delivered slashes to her head and legs, as well as other injuries. The jury could also reasonably infer the defendant's specific intent to kill from the threatening letters the defendant subsequently wrote to the victim while he was incarcerated awaiting trial for a prior attack on her, which letters were corroborative of other evidence establishing that the defendant harbored an intent to kill the victim. The letters included in terrorem rantings by the defendant to the effect that, "for some people life is going to be hell to pay" if someone were to testify (the victim was to be a witness), and that, "I'll be a free man one day, and I'll stay alive with one goal, I know you know what that is. So stay alive until then. . . . One day you'll really get what you deserve. I'll bet my life on it, bitch." Furthermore, in considering whether the defendant had intent to kill, the jury could certainly consider the mode of assault as consistent with a pattern of increasingly severe acts of violence by the defendant spanning the four-year period preceding the stabbing.

With respect to the stalking charge, the defendant's motion

for a required finding of not guilty was also properly denied. The stalking statute, G. L. c. 265, § 43(*a*), "requires that the Commonwealth prove . . . (1) that the defendant engaged in a knowing pattern of conduct or series of acts over a period of time . . . ; (2) that the conduct or acts must 'seriously alarm[] or annoy[] [a] person'; and (3) 'would cause a reasonable person to suffer substantial emotional distress' " (emphasis omitted). *Commonwealth* v. *Jenkins*, 47 Mass. App. Ct. 286, 288-289 (1999), quoting from G. L. c. 265, § 43(*a*), as amended by St. 1996, c. 298, § 11. Contrary to the defendant's contention, there was ample evidence introduced establishing that the victim was gravely alarmed by the defendant's repetitive acts of violence and was greatly distressed by the behavior of the defendant within the relevant time period. This evidence would warrant the jury verdict on the stalking charge.

c. *The jury claim.* The defendant's claim that the trial jury did not represent a fair cross section of the community because the jury pool from which the petit jury was drawn did not include black persons (or, alternatively, or so the defendant contends, was underrepresented with respect to black persons) was not properly preserved. However, even if we were to consider the defendant's challenge, there is not support for it.

The defendant has not met his burden of demonstrating — and the record does not support the contention — that blacks were not fairly and reasonably represented in the jury venire in relation to their proportion in the community, or that there was any systematic exclusion of minorities in the compilation of the jury list. Cf. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 88-103 (1980). The defendant's self-serving affidavit filed in the appeal (as a motion to expand the record) asserting that there were no blacks in the jury venire is wanting and is purely speculative.[12] A defendant must advance more than speculation

___

[12]In reality, the defendant seems to be expressing discontent with the fact the trial jury did not include black persons. In the final analysis, however, "[a] criminal defendant is constitutionally entitled to a jury selection process free of systematic discrimination against his grouping in the community," *Commonwealth* v. *Fryar*, 425 Mass. 237, 241, cert. denied, 522 U.S. 1033 (1997), but is not entitled to a jury composed of any particular race.

We note the trial judge, at the request of the prosecution, and with the consent of the defendant, conducted a voir dire and inquired individually in

or self-serving unsupported assertions. Compare *Commonwealth v. Tolentino*, 422 Mass. 515, 520-521 (1996).[13,14,15]

<em>Judgments affirmed.</em>

---

several different contexts as to whether any potential juror was unable to render an impartial verdict due to the racial backgrounds of the victim (white) and the defendant (black).

[13]As to the question of the admission of the knife in evidence, we see absolutely no basis to conclude in these circumstances that the judge abused her discretion or otherwise committed palpable error. See *Commonwealth v. Booker*, 386 Mass. 466, 469-470 (1982).

[14]The defendant's claim that the police lacked probable cause to arrest him is so devoid of merit that no discussion is warranted.

[15]For the first time in his reply brief and without citation to any legal authority, the defendant complains of ineffective assistance rendered by his trial counsel. We need not address this claim. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Cantell v. Hill Holliday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 556 n.7 (2002). However, since we conclude that the defendant's other claims of error are without merit, there was no ineffective assistance of counsel. See *Commonwealth v. Silva*, 431 Mass. 401, 406 n.7 (2000).