NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1506

COMMONWEALTH

vs.

NICHOLAS P. GOUSIE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District Court jury convicted the defendant of indecent assault and battery on a child under fourteen. On appeal, the defendant claims error based on (1) violations of the first complaint doctrine, (2) the admission of bad act evidence, (3) the judge's handling of a jury question, and (4) the judge's failure to poll the jury after the verdict. We conclude that the cumulative effect of several errors relating to first complaint evidence resulted in a substantial likelihood of a miscarriage of justice. Based on this conclusion, we vacate the defendant's conviction and remand the case for a new trial.

Background. The Commonwealth alleged in a criminal complaint that on September 1, 2014, the defendant committed an

act of indecent assault and battery on a child under fourteen years old.  The victim testified that when she was ten or eleven years old, the defendant (her stepfather) touched her breasts.  She described how the defendant told her to take her clothes off while tucking her into bed and played "tickle monster," during which he "would do like the up and down [her] side thing, and then he would grab [her] boobs, like in a -- he would go like that to them, and he would tell [her] wow, they're getting bigger."  The victim testified that this type of touching occurred three or four nights per week when her mother was at work.

The victim testified that the first person she told about the sexual assaults was her biological father (father), and she provided the jury with the circumstances and details of that conversation.  She also testified that after her father learned about the abuse, he called the victim's mother and told her about it.  At the time, the victim was living with her three siblings, her mother, the defendant, and the defendant's mother.  When the victim's family members (other than her father) heard about her accusations, they got "mad" at her and "made [her] feel like it was [her] fault," so the victim "said it didn't happen."  The victim testified that she finally told another person about the sexual assaults in 2021, and that she "reported

2

it" at that time because the person convinced her it was "not [her] fault" and she "should tell someone."

Before the victim testified, the Commonwealth called the lead investigator, Attleboro police officer Katelyn Hart, as a witness. Officer Hart testified about the process of investigating cases involving child victims, including receiving a referral from the Department of Children and Families (DCF) and working on a "multi-disciplinary team" with members of the district attorney's office and Children's Advocacy Center (CAC). Over the defendant's objections, Officer Hart testified that in October 2021, she received a "referral" from DCF, which stated that the victim disclosed a prior sexual assault to a "mandated reporter," and the perpetrator was identified as the victim's stepfather. Officer Hart also testified that the victim was interviewed at the CAC. In response to questions from defense counsel, Officer Hart said that she did not investigate any other potential suspects because she only does so when she believes it will be helpful and "[the victim's] statements during her forensic interview did not include that it was a different person. She was very specific on the suspect being her stepfather, and explaining that." On redirect examination, Officer Hart testified, "[The victim] reported during her

3

interview that at one point she made a partial disclosure about being abused to her father."

Discussion. 1. First complaint issues. Under the first complaint doctrine, a victim of a sexual assault and the first person the victim told of the sexual assault may testify to the details of the victim's first complaint as part of the Commonwealth's case-in-chief. See Commonwealth v. King, 445 Mass. 217, 242-245 (2005), cert. denied, 546 U.S. 1216 (2006). The Commonwealth is limited to one first complaint witness. See id. at 242-243. In addition, the victim may not "testify to the fact that she 'told' others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted." Commonwealth v. Aviles, 461 Mass. 60, 68 (2011).

The defendant argues that repeated violations of the first complaint doctrine resulted in a substantial risk of miscarriage of justice. See Aviles, 461 Mass. at 72. The Commonwealth concedes that there were errors but contends that reversal is not warranted because the improperly admitted evidence benefitted the defendant.

Prior to trial, the prosecutor stated she intended to call two witnesses, the victim and the lead police investigator, and

4

thus she would not be presenting first complaint evidence.[1] Nevertheless, in her opening statement, the prosecutor twice referred to the victim's report of abuse.  Admission of the victim's subsequent testimony that she first reported sexual abuse by her stepfather to her father was error, because the victim's father did not testify at trial.  Aviles, 461 Mass. at 68 n.6 (first complaint doctrine does not permit Commonwealth to offer evidence of disclosure unless first complaint witness also testifies at trial).  The victim's testimony that she later disclosed the abuse to another, unidentified person compounded the error.[2]  See King, 445 Mass. at 243 (evidence of multiple complaints not permitted because it may unfairly enhance complainant's credibility and prejudice defendant by repeating details of alleged crime).  See also Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (mere fact of disclosure, even without contents or details, constitutes complaint for purposes of first complaint doctrine).

---

[1] The prosecutor misidentified the victim's therapist as the first complaint, but in any event stated, "We're not calling . . . [the] therapist."

[2] The defendant also asserts that the victim's testimony that her father told her mother about the assaults violated the first complaint rule.  Although that evidence was inadmissible hearsay, it did not implicate first complaint.

The first complaint doctrine was violated further in several ways by the improper testimony of the police officer. Absent some legitimate purpose, such as to provide context for first complaint testimony or in response to a defense theory, testimony about the details of the police investigation of a sexual assault complaint is not permitted. See Commonwealth v. McCoy, 456 Mass. 838, 847 (2010); Stuckich, 450 Mass. at 457. Therefore, Officer Hart's detailed testimony regarding the process of investigating allegations of child sexual assault was inadmissible. Officer Hart's repeated testimony about the victim's multiple complaints -- to her father, to a "mandated reporter," and to a forensic interviewer at the CAC -- was likewise inadmissible. See King, 445 Mass. at 242-243. Additionally, Officer Hart improperly conveyed her belief that the victim was credible and testified that "there was a conclusion made" to charge the defendant after she "conferred" with members of the district attorney's office. See Commonwealth v. Espinal, 482 Mass. 190, 202 (2019) (improper to offer evidence of use of Commonwealth's investigative resources to create "imprimatur of official belief" in victim's claim [citation omitted]); Stuckich, 450 Mass. at 457 ("imprimatur of official belief in the complainant . . . [is] irrelevant to the issue of the defendant's guilt, and is extremely prejudicial").

6

Despite the amount of first complaint evidence, the jury were given no limiting instruction that such evidence may only be used to establish the circumstances of the complaint and to determine whether it supports or fails to support the victim's testimony.  See King, 445 Mass. at 247-248.  We recognize that a judge is not obligated to give limiting instructions where, as here, the defendant neither requests a first complaint instruction nor objects to its absence.  See Commonwealth v. Peno, 485 Mass. 378, 395-396 (2020).  However, because the risk of unfair prejudice in this case was evident, the judge should have given the standard limiting instructions and the failure to do so increased the prejudicial effect of the first complaint evidence.  See id.

We are not persuaded by the Commonwealth's argument that the defendant was not harmed by these errors because they permitted the victim's recantation to be admitted as substantive evidence.[3]  As the defendant points out, the recantation was "nestled within the context of multiple violations of the first complaint doctrine and the jury was given no direction as to how to weigh any of it."  Therefore, the jury were left free to

---

[3] Ordinarily, a recantation is admissible as a prior inconsistent statement relevant only to credibility of the witness's trial testimony.  See Commonwealth v. Pires, 97 Mass. App. Ct. 480, 487 (2020), rev. denied, 485 Mass. 1104 (2020).

7

consider the hearsay accounts of the abuse as additional evidence that the assaults occurred, rather than on the limited issue of the victim's credibility.  See King, 445 Mass. at 219. "In a case such as this one, which turned on credibility, there is a particularly high probability of prejudice from the admission of duplicative complaint evidence" (citation omitted). Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 389 (2020).

Ultimately, the victim's testimony that she told her father about the abuse combined with evidence of multiple complaints, improper police testimony creating the imprimatur of official belief in the victim's complaint of abuse, and the absence of any instructions from the judge to mitigate the harm created by these trial errors leave us with "a serious doubt whether the result of the trial might have been different had the error[s] not been made."[4]  Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).  We conclude that there was a substantial risk of a miscarriage of justice.

2.  Other issues.  After a hearing on the defendant's motion in limine, the judge permitted, as other bad act evidence, the victim to testify that the defendant told her to

_____

[4] We disagree with the Commonwealth's contention that it can be inferred from the record that counsel's failure to object was simply a reasonable tactical decision.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

8

do gymnastic splits naked while he watched and that he photographed her naked vagina. No limiting instruction was requested by the defendant and none was given by the judge.[5] To the extent evidence of the defendant's other bad acts is admitted at a retrial, the judge must give a limiting instruction regardless of the defendant's failure to request it or to object to its absence.[6] See Commonwealth v. Mills, 47 Mass. App. Ct. 500, 505-506 (1999). The instruction should be given at the time the evidence is admitted and in the final

---

[5] In response to a question from jurors whether they could "consider what [the victim] said about naked splits," the judge instructed, in relevant part,

> "[O]f course you can consider it. You can consider everything she and everyone else said, and you can use that testimony and rely on it to the extent that you deem it's appropriate. . . . I would just remind you that [the defendant's] not charged with having his stepdaughter perform naked splits. He's charged with indecent assault and battery."

Here, the judge should have instructed the jury on other bad acts by the defendant, consistent with Instruction 3.760 of the Criminal Model Jury Instructions for Use in the District Court (2024).

[6] The judge permitted testimony from the victim, over the defendant's objection, that the defendant touched her breasts on multiple occasions. This testimony constituted evidence of other bad acts because the complaint alleged conduct occurring on a single date. Before such evidence is admitted at any retrial, the judge must preliminarily determine that this other bad act evidence is admissible. See Commonwealth v. White, 60 Mass. App. Ct. 193, 198-199 (2003).

9

charge.  See Commonwealth v. Linton, 456 Mass. 534, 551 & n.12 (2010).

During deliberations, the jury foreperson sent a note to the trial judge that one of the jurors could not "make a clear cut decision due to Hinduism."  With counsel present, the judge conducted a thorough colloquy of the juror during which it became evident that the juror may have had difficulty deciding the case solely on the evidence and the law.[7]  Just prior to allowing both counsels' request to discuss the situation further before they responded to the judge's inquiry as to what should be done "regarding this allegedly disabled juror," the judge instructed the juror to "go back into the jury room -- and continue to deliberate with your fellow jurors."  Where the juror issue had not been resolved and counsel were not afforded the opportunity to be heard fully, the judge's decision to permit the juror to return to the jury room and instruction that deliberations were to continue were an abuse of discretion.  See Commonwealth v. Collins, 36 Mass. App. Ct. 25, 32 (1994), rev. denied, 417 Mass. 1103 (1994) (judge has discretion to determine when it may be appropriate to suspend deliberations).

---

[7] The juror was concerned that his verdict could impact his karmic cycle in future incarnations of his life form.

10

About four minutes after the judge sent the juror back to deliberate, the jury returned a verdict.  The defendant objected and asked that the jurors be polled individually.  The judge declined, stating that it "appeared" that every juror affirmed the verdict when the clerk inquired of them as a group.  Although the judge acted within his discretion, see Commonwealth v. Mendes, 441 Mass. 459, 477-478 (2004), we think the better practice given the nature of the juror issue and the brief time that elapsed between the resumption of deliberations and report of a jury verdict would have been to accede to the defendant's request, if for no other reason than to inspire confidence that the verdict was reached unanimously based on the evidence.  Cf. Commonwealth v. Zekirias, 443 Mass. 27, 31 (2004) (judge does not have authority to accept tentative verdict).

Judgment vacated.

Verdict set aside.

By the Court (Vuono,
  Brennan & D'Angelo, JJ.[8]),

Clerk

Entered:  May 5, 2025.

_____

[8] The panelists are listed in order of seniority.

11